## Jones v. Davis et al.

(Decided Oct. 4, 1932.)

(As Extended on Denial of Rehearing Dec. 13, 1932.)

294

B. B. GOLDEN and GOLDEN, GILBERT & GOLDEN for appellant.

V. C. McDONALD for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing on Original and Affirming on Cross Appeal.

The Castro Mining Company, a corporation, was engaged in 1929, in Bell county, Ky., in the business of mining coal. J. D. Jones was in its employment, engaged in loading coal at its mine. It is conceded that the Castro Mining Company was operating, and Jones was working, under the Workmen's Compensation Act. While he was engaged in loading coal on the 2d day of September, 1929, slate fell upon him, severly and permanently injuring him. The extent and nature of his injury are not disputed. It is admitted that he sustained his injury by an accident "arising out of and in the course of his employment." Prior to the date of his injury and in 1928, Jones had worked for the Castro Mining Company in its mine. Since November next prior to his injury he had not worked at the mine of the appellee. He cultivated a crop for himself during the crop season of 1929. On Friday next before he sustained his injury, on Monday, Jones returned and began to work for the Castro Mining Company. The mine did not run on Saturday. On the following Monday morning he began loading coal in the mine when, some time during the day (the record is not definite as to the hours he worked on that day), he sustained the injury by the falling of slate.

On the 2d day of October, 1930, he filed with the Workmen's Compensation Board an application for adjusted compensation. On the 7th day of April, 1931, the board, on the evidence before it, awarded him $5.07 per week from the 2d day of September, 1929, for a period of 52 weeks, less one week waiting period, for temporary, total disability, and the further sum of $3.04 per week for 284 weeks for partial, permanent disability, or 60 per cent. of the 100 per cent. disability which he claimed as the direct and proximate result of his injury. It is clearly shown that Jones' disability

was 90 per cent. below normal, and that 50 or 60 per cent. thereof was attributable to the injury which resulted from the slate falling upon him, and the remaining disability resulted from preexisting diseases, namely, acute infection, dysentery, and general senile changes of his body. He was 51 years of age at the time. At his request his application was reviewed and considered by the full board which approved its former award. Thereafter he filed in the Bell circuit court a petition for review under section 4935, Ky. Statutes, which was dismissed by the court, leaving the award in effect. From this order, he appeals.

For reversal, he insists that the board erred in its finding of fact when fixing his average weekly wages, and that it did not separate the result of pre-existing diseases and the result of the injury sustained, and failed to apportion the award accordingly.

It is his insistence that it was the duty of the board, under section 4880, Ky. Statutes, to separate explicitly and specifically his disability resulting from pre-existing diseases from that resulting from the injury for which he sought compensation. B. F. Avery & Sons v. Carter, 205 Ky. 548, 266 S. W. 50.

It should be noted that the board has not formally, nor in exact words, in its award, stated its finding as to pre-existing diseases. However, the language used by it is, "for permanent, partial disability, of 60% of the 100% disability claimed now," which language we deem adequate to meet the requirements of. section 4880, Ky. Statutes. By implication it clearly fixed the result of pre-existing diseases at 40 per cent., and expressly fixed his disability resulting from his injury at 60 per cent. of his total disability.

His contention that it did not correctly find and fix his average weekly wage is more perplexing and requires a review of the evidence bearing on the question which it presents. On the 31st day of August, 1929, the wages of appellant for that day was $1.30. His wages for that portion of the day on which he was injured was 65 cents. Jones had been employed by, and worked for, the Castro Mining Company in its mine in November, 1928. His rate of wages during that time was the same as it was in 1929. The pay roll made and kept by the appellee, during the period of time in 1928

when he worked in its mine, appears in the record. It shows he worked fourteen days during the month of November, 1928, for which he received wages, $61.75, or average daily wages of $4.41. Counting six days to the week, this made his average weekly wages $26.46 during the time he worked in 1928. The board to ascertain and determine, as required by section 4905, Ky. Statutes, the "average weekly wages" earned by the appellant at the time of the injury, confined itself to $1.30 which he earned on Friday before he sustained his injury on Monday. In doing so, it multiplied the $1.30 by six week days, making $7.80 for the week, and multiplied this amount by 65 per cent. as required by section 4899, Ky. Stats. Thus obtaining $5.07, the award per week, from the 2d day of September, 1929, for 52 weeks. To fix the amount per week for partial permanent disability, as required by this section, it multiplied the $5.07 by the 60 per cent. of the total disability, making $3.04 per week for the period of 284 weeks.

Section 4957, Ky. Statutes, provides how the employer and employee shall elect to operate and work under the Compensation Act. Therein it is provided the election shall be effective from the date of its signing, and "if the employment at any time be suspended for less than one year, the original acceptance of the employee shall continue effective in subsequent employment under the same employer, unless withdrawn in the manner provided under sec. 4959 of this act."

In section 4905 the rule for computing compensation is thus stated:

"Compensation shall be computed at the average weekly wage earned by employee at time of injury, reckoning wages as earned while working at full time. If the employee, at the time of the injury, is regularly employed in a higher grade of work or occupation than formerly during the year, and with larger regular wages, only such higher grade of work or occupation, if the same be not seasonal, shall be taken into consideration in computing his average weekly wages."

It will be observed that the provisions of section 4957 contemplate suspension of work by the employee for not less than one year from the date of the election

to work under the act, without affecting his contract of employment, and that by section 4905 it is provided that "if the employee, at the time of the injury, is regularly employed in a higher grade of work * * * than formerly during the year, and with larger regular wages, only such higher grade of work * * * shall be taken into consideration in computing his average weekly wages." It should be noted that both of these sections regard the period of one year for the purpose of the act. The Workmen's Compensation Board did not consider, when computing the compensation awarded Jones, the average weekly wages earned by him in the month of November, 1928, which was within one year next before the date of his injury. It only considered the one day on which he worked next before he was injured. It is not conceivable that his "average weekly wage" can be arrived at and determined by his wages for one day. Section 4899, Ky. Statutes, should control the board where the employer and employee have elected to operate and work under the act, and the employee is engaged in piece work as in the present case, but under his employment, has worked less than six days.

Our Statutes do not define "average weekly wage." Ordinarily where the workman has been in the same employment for more than six days, or for a term of weeks or months, at the same rate of wages, the term "average weekly wage" is the result obtained by dividing the total amount actually earned by him during the time he worked under his employment, by the number of weeks during which he was employed, although his work was irregular. Peacock, Nidre &c., Coal Co., Sc. Ct. Sess. 4 F. 443 and W. N. 162. Earl of Halsberry, L. C., in discussing the word "average" used this language:

"I think in ordinary popular parlance when you talk of the employee's average wages, if he has earned irregular wages, whether annual, monthly or weekly, wages, you would say on the average he got so much a week or so much a month as the case might be. I think it was in that popular sense taking one with another, or one week with another, that the legislature used these words and I think it is what everybody would understand by 'average,' that his earnings were so much—not his earnings by contract, where it would be definite—that if the

man was only employed at irregular intervals or irregular amounts you would get whatever the average was by putting them together and striking an average so as to get a test of the weekly sum to be paid.''

In Ayers v. Buckridge, 1 K. B. 57, W. M. 222, **71** L. J. K. B. 28, 85 L. T. (N. S.) 472, it was said:

"If the workman at the time of his injury had worked more than one week but less than two weeks, his wages for six days were taken as his weekly earnings, and it was immaterial that he did not work six days in any one calendar week."

'Ann. Cas. 1913D, 1025; Bragg's Quarry v. Smith, **161** Tenn. 682, 33 S. W. (2d) 87.

The generally recognized meaning of the term ''average weekly wages'' is the average weekly wages actually earned during the time the employee was actually employed, reckoning wages earned while working full time, though there may be a period of suspension of work for less than one year from the date of his election to work under the act. Rice's Case, 229 Mass. 325, 118 N. E. 674, Ann. Cas. 1918E, 1052; Beaver Dam Coal Co. v. Hocker, 202 Ky. 398, 259 S. W. 1010; Chatfield v. Jellico Coal Minning Co., 205 Ky. 415, 265 S. W. 943; American Tobacco Co. v. Grider, 243 Ky. 87, 47 S. W. (2d) 735. Of course the employer may show that the earning capacity of the employee was impaired, or that his rate of wages was reduced, during such suspension.

Jones testified that his average weekly wages were $3, $4, and $5 per day. "Books kept by employer, though constituting evidence of highest order as to average earnings of injured employee, are nevertheless not conclusive." Harvey Coal Corp. v. Pappas, 230 Ky. 108 S. W. (2d) 958, 73 A. L. R. 473. The purpose of the statute was to protect the injured employee and his family in case of loss of power to earn money. It should be liberally construed. American Tobacco Co. v. Grider, supra; Elkhorn Collieries Co. v. Robinson, 234 Ky. 24, 27 S. W. (2d) 393; Stiglitz Furnace Co. v. Stith's Adm'r, 234 Ky. 12, 27 S. W. (2d) 402. It is not unfair or unreasonable when computing the average weekly wages of Jones to take into consideration the wages earned by him under his employment by the ap-

pellee during the continuation of the effect of his and the company's election to work under the act, or at least for a reasonable time next before he sustained his injury, which includes his work in the month of November, 1928. His returning to work on August 31, 1929, cannot, with reason, be regarded as an independent or new employment, otherwise section 4957, providing for the continuation of the effect of his election thereunder, is ineffectual and meaningless. The disregarding by the board, when determining his "average weekly wage" and computing his compensation, the record of his work and wages kept by the appellee, requires a remanding of the case to it for further consideration. It is very plain that in using his one day's wages as the basis of its award, it did not regard section 4905.

The appellee argues that the application for review to the full board was not made within seven days from the date of the award, as is required by section 4934, Ky. Statutes, and that the petition to the circuit court for review was not filed within twenty days after the rendition of the first award of the board, and that therefore neither the board nor the circuit court by virtue of Jones' application for review by the full board acquired jurisdiction, and for like reasons this court has no jurisdiction. This court has repeatedly held these sections mandatory. Carnahan Oil & Refining Co. v. Miller, 232 Ky. 78, 22 S. W. (2d) 430; Phil Hollenback Co. v. Hollenback, 181 Ky. 262, 204 S. W. 152, 13 A. L. R. 524; Carrs Fork Coal Co. v. Scott, 204 Ky. 656, 265 S. W. 19; Lena Rue Coal Co. v. Brewer, 213 Ky. 327, 280 S. W. 1097; Southern Mining Co. v. Collins, 222 Ky. 388, 300 S. W. 896; Verda Harlan Coal Co. v. Harlan National Bank, 229 Ky. 565, 17 S. W. (2d) 718; Hill v. Consolidated Coal Co., 232 Ky. 641, 24 S. W. (2d) 261.

The original application of Jones was heard before a referee of the Workmen's Compensation Board, and after hearing the evidence offered by the parties, he undertook for the board to determine the dispute in a summary manner and otherwise comply with the requirements of section 4933, Ky. Statutes. The duties imposed upon the board by this section are aptly and concisely stated in its own language. It reads:

"The board, or any of its members, shall hear the parties at issue and their representatives and wit-

nesses and shall determine the dispute in a summary manner. The award, together with a statement of the findings of fact, rulings of law and any other matters pertinent to the question at issue, shall be filed with the record of proceedings, and a copy of the award shall *immediately* be sent to the parties in dispute." (Our italics.)

It will be observed that this language requires of the board the performance of certain, definite, specific duties, i. e.:(a) To determine the dispute in a summary manner; (b) make order or award, together with the finding of fact and rulings pertinent to the issue; (c) file same with the record of the proceedings; and (d) send immediately a copy of the award or order to the parties to the dispute. The clause of this section requiring the board to make, with its order or award, a finding of facts, has often been construed as mandatory. South Mountain Coal Co. v. Haddix, 213 Ky. 568, 281 S. W. 493; Stokes v. Black Hawk Coal Co.'s Receiver, 242 Ky. 849, 47 S. W. (2d) 740; Standard Elkhorn Coal Co. v. Royark, 243 Ky. 828, 50 S. W. (2d) 33, The requirements of section 4933, are by the language of section 4934, carried into section 4934.

The clause requiring the board to send immediately a copy of the award or order to the parties to the dispute has not been heretofore presented and construed by this court; nor has the term "rendition," as it is used in section 4935. It is presumed in every case, unless the contrary affirmatively appears, that the board in the discharge of the duties prescribed by section 4933, Ky. Statutes, discharged them in the manner and form prescribed and as directed by the provisions of this section. The word "rendition," as it is used in section 4935, is the performance by the board of the duties set fourth in section 4933. A discharge thereof by the board, collectively or together, is a "rendition" within the meaning of the term as it is used in section 4935, and not the mere act of preparing, dating, and signing of the award or order of the board "Rendition" is the act of rendering; to "render" is to deliver; transmit; as to render a message; to state; deliver; as to render an account of money or actions; to render judgment; to render a bill; to furnish; as to render assistance, or as "to render unto Cæsar the things that are Cæsars." Webster's New International Dictionary;

Ætna Life Insurance Co. v. Hesser, 77 Iowa, 381, 42 N. W. 325, 4 L. R. A. 122, 14 Am. St. Rep. 297. If, as in this case, it is shown without dispute that no copy of the award was in fact sent by the board to the applicant or to his counsel, it should be deemed that one of the essential elements of "rendition," as this word is used in section 4935, was omitted by it. The right to a review by the full board as authorized by section 4934 is a valuable one, and the party entitled thereto cannot be deprived thereof by a failure of the board, through inadvertance, or otherwise, to observe and discharge its statutory duty to send a copy of the the award or order to the party or his counsel as required by section 4933. No one of its statutory duties, as prescribed by this section, may be omitted or dispensed with by the board so as to deprive either party to the proceeding of his statutory right. The board is not required by the Statutes to hold a term, or to set apart a day, for the determination of the issues in the proceeding at or on which to make the award or order. Its discharge of the duties prescribed by section 4933 is without notice to, and in the absence of, the interested parties, and therefore the requirement that a copy of the award shall be sent immediately to the parties to the dispute is indispensable and wisely mandatory. It is the method provided by the act to afford due process to the parties to the dispute. It is essential to the validity of the award or order, and is one of the acts of the board necessary to constitute the rendition of the order or award as this term is used in section 4935.

Any other construction of sections 4933, 4934, and 4935 would place it within the power of the board, if it desired, or if it neglects so to discharge its statutory duty in this respect, to deprive the parties of their statutory right of making application for a hearing before the full board, or the filing of a petition for review by the circuit court, by merely refusing or failing to send copy of the award or order until it was too late for them to assert their statutory right, or too late to avail themselves thereof.

The affidavit of counsel was filed in the present case, showing the copy of the award was sent to a disinterested third party, and not to the applicant nor his counsel of record. It was delivered to the appellant's

counsel by the third party, which, for the purpose of section 4933, served the purpose of its requirement. It and the application for review before the full board were filed within seven days after the copy of the award was sent by the third party to counsel of Jones as was his imperative duty and in order to entitle him to avail himself of the requirement of the Statutes in respect to sending immediately a copy of the award, and his so doing was both a waiver of the informality of the sending of the copy by the board and a compliance by him under the circumstances with section 4934, requiring the application for review before the full board to be made within seven days after the date of the award. The petition to the circuit court for review by it was filed within twenty days after the full board made its final award, made on an application for review of the referee's award.

Wherefore the judgment is reversed on the original, and affirmed on the cross, appeal, with directions to remand the action to the Workmen's Compensation Board, to consider the record of the appellee showing the work and wages of the appellant during the year 1928 as well as in 1929, and for proceedings consistent with this opinion.