## Benito Mining Co. v. Girdner et al.

(Decided Dec. 14, 1937.)

HIRAM H. OWENS for appellant.

GOLDEN & LAY for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This is an appeal from a judgment of the Harlan circuit court affirming an award of the Workmen's Compensation Board directing the Benito Mining Company to pay to the widow and dependent son of W. D. Girdner the sum of $12 per week for a period of 335 weeks,

the total payments not to exceed the maximum sum of $4,000. W. D. Girdner and his employer, the Benito Mining Company, had both accepted the provisions of the Workmen's Compensation Act (Ky. Stats., sec. 4880 et seq.).

Girdner was injured on August 29, 1935, in appellant's mine while employed as a coal loader, and died September 16, 1935. While loading a mine car, he mashed the little finger on his left hand. The company doctor was absent from the camp, and Girdner was taken to a hospital in Harlan, Ky., a distance of 13 miles, where the injured finger was amputated by Dr. J. H. Hendren. The board found that Girdner's death was caused by septicemia, or blood poisoning, resulting directly from the injury. Appellant's main insistence is that there was no evidence of probative value tending to show that septicemia caused Girdner's death or that the injury contributed in any way thereto. Dr. Hendren was not in the employ of appellant, but he performed the operation in the absence of Dr. E. H. Miller, who usually did the surgical work for appellant at the Harlan Hospital. Dr. Miller returned to Harlan the day after the operation and dressed Girdner's finger two or three times. On the second or third day after the accident, he permitted Girdner to return to his home at Four Mile, Ky., about 40 miles from Harlan. After his return to his home, Girdner went to Dr. Pierce Martin to have the finger dressed. Dr. Martin dressed it about four times. On September 15, 1935, Girdner was suffering great pain and a neighbor took him in an automobile to the Harlan Hospital where he died the following morning. On his arrival at the hospital, he was examined by Dr. Hendren and Dr. Miller. They testified that in their opinion he had peritonitis, caused probably by a ruptured intestine resulting from an ulcer. They stated that they found no symptoms of blood poisoning, and that in their opinion the injury had nothing to do with his death. Dr. Miller stated, however, that the finger was infected when he first dressed it the day after the injury was received. Five physicians from Louisville, who were introduced as expert witnesses, in answer to hypothetical questions, expressed the opinion that Girdner's death was caused by peritonitis, and that he did not have blood poisoning. Dr. Miller, Dr. Hendren, and the five Louisville physicians testified that the cause of his death could have been ascertained by a post mortem, or at least it could

have been determined whether or not Girdner had peritonitis. Dr. Pierce Martin testified that he had known Girdner for more than 20 years, and had been his family physician during that time. Girdner was apparently in good health when he went to Harlan county to work in the coal mine. Dr. Martin treated Girdner's injured hand after his return to Harlan county, and stated that in his opinion Girdner's death was caused by septicemia resulting from an infection at the time of the injury. He stated that his hand and arm were swollen, and that red streaks extended from the point of the injury to the wrist and up the left arm; that he took Girdner's temperature on three occasions, and on one occasion it was 102 and on another 103. Several other witnesses testified that Girdner's hand and arm were swollen, and that they saw the red streaks extending up his arm from the wound before he returned to the Harlan Hospital. An effort was made to show that Dr. Martin was guilty of malpractice, particularly in the manner in which he administered an enema to the deceased, and that this probably caused peritonitis to develop. After the physicians introduced by appellant had testified that the cause of Girdner's death could have been ascertained by a post mortem examination, Dr. Mason Combs and Dr. Edward Wilson, both of Pineville, were introduced by the plaintiffs. They testified that they conducted an autopsy on Girdner's body about 3 months after his death, made a thorough examination of the intestines and stomach, and found no evidence of peritonitis or other disease. Dr. Combs had testified in chief, and, in response to a hypothetical question embodying facts testified to by Dr. Martin, stated that in his opinion blood poisoning caused Girdner's death. Following the testimony of Dr. Combs and Dr. Wilson concerning the autopsy, the appellant introduced the undertaker who embalmed the body and his assistant. They testified to facts which tended to show that the post mortem examination was not thorough, but, when the evidence is viewed as a whole, it cannot be said there was no evidence of probative value supporting the board's finding of facts, a condition which must exist before we are authorized to set it aside.

It has been held in a long line of decisions that in the absence of fraud the board's finding of facts cannot be disturbed on appeal unless there is an entire absence of competent and credible evidence to support it. Lee Clay Products Company v. Stamper, 268 Ky. 786, 105

S. W. (2d) 1069; Hoenig v. Lemaster's Committee, 268 Ky. 44, 103 S. W. (2d) 708; Jones v. State Highway Commission, 266 Ky. 179, 98 S. W. (2d) 478; Yeager v. Mengal Company, 260 Ky. 156, 84 S. W. (2d) 6. It cannot be said that the testimony of Dr. Martin and other witnesses as to the appearance of Girdner subsequent to his injury is not credible. In ascertaining the facts, it is within the province of the board to determine the credibility of the witnesses. Hansen v. Frankfort Chair Company, 249 Ky. 194, 60 S. W. (2d) 349.

The board found the average weekly wage of deceased to be $23.52, and it is argued that there was no basis for the finding since he had worked only 1 day, or a part of a day. The deceased began working for appellant August 28, 1935, and received his injury on the following morning. His son, Jesse, who was working with him when he was injured, testified that the deceased worked one-half day on August 28, and earned $1.98 and that he was injured August 29, after he had worked 3 hours and loaded five tons of coal. Coal loaders received 49 cents a ton for all coal loaded on cars. Section 4905 of the Kentucky Statutes provides that "compensation shall be computed at the average weekly wage earned by employee at time of injury, reckoning wages as earned while working at full time." The term "at full time" has been defined as meaning " 'a full working day for six days in every week of the year,' regardless of whether the injured employee actually worked for all or part of the time." American Tobacco Company v. Grider, 243 Ky. 87, 47 S. W. (2d) 735; Chatfield v. Jellico Coal Mining Company, 205 Ky. 415, 265 S. W. 943. Here the employee had worked a sufficient length of time to enable the board to fix with some degree of certainty his average weekly wage, and it is clear that his wages were sufficient to authorize the maximum compensation of $12 a week to his dependents. Since the deceased had not worked for the appellant during the year previous to his employment on August 28, 1935, the only basis for computing his average weekly wage was the amount of wages earned by him during the one-half day he worked August 28, and the 3 hours he worked August 29, before he was injured. The case of Jones v. Davis, 246 Ky. 293, 54 S. W. (2d) 681, cited by appellant, has no application to the facts in the case before us. In that case, Jones earned $1.30 on Friday before he sustained his injury on Monday, and the Compensation Board fixed his aver-

age weekly wage by multiplying this sum by 6, making the average weekly wage $7.80. It was held that this method of ascertaining the average weekly wage was erroneous since it appeared that Jones had worked for the same employer at the same rate of wages within 1 year next before the date of his injury. It was held that his earnings during his former employment within the year should have been considered in fixing his average weekly wage.

The Workmen's Compensation Act should be liberally construed (section 4987) to effectuate its purpose, which is to afford financial protection to the employee and his dependents, in the event he is injured or killed in an accident arising out of and in the course of his employment. When it enacted section 4905, the Legislature, no doubt, had in mind the hardship which would result if the average weekly wage of an employee should be limited to the amount actually earned by him when he had worked less than a week at the time of his injury. In Beaver Dam Coal Company v. Hocker, 202 Ky. 398, 259 S. W. 1010, 1011, the court said:

"If only the employee's average weekly wage were to be controlling, there would have been no necessity for adding the words, 'reckoning wages as earned while working at full time.' One who works only part of a day, or only two or three days out of a week, or only a few weeks out of the year, cannot be said to be working at full time. We therefore conclude that the words 'at full time' necessarily mean a full working day for six days in every week of the year."

The appellant insists that in any event the judgment must be reversed because it requires the appellant to pay $21 per week for a period of 335 weeks instead of $12 per week, the sum awarded by the Compensation Board. The judgment reads, in part:

"It is therefore ordered and adjudged by the Court that the finding and award of the Workmen's Compensation Board be, and the same is in all respects, sustained and affirmed, and it is therefore ordered by the court that the said Sallie Girdner and John Frank Girdner recover of the defendant, Benito Mining Company, the sum of $21.00 per week for a period of 335 weeks, with interest on past due payments, commencing the 16th day of September, 1935, or until the intervening termination of de-

pendency, but in no event to exceed the maximum sum of Four Thousand ($4,000.00) Dollars.''

The recitation of the judgment that compensation should be paid at the rate of $21 per week instead of $12 per week is clearly a clerical error. The circuit court affirmed the award of the Workmen's Compensation Board. The award of the board was for the sum of $12 per week for a period of 335 weeks, commencing the 16th day of September, 1935, or until the intervening termination of dependency, but in no event to exceed the sum of $4,000, and the sum of $75 for burial expenses. It was not necessary for the circuit court, in its judgment, to repeat the terms of the award. The purpose and effect of the judgment was to sustain the award of the board.

The judgment is affirmed.