## Fulton Ice Co. v. Meacham et al.

(Decided May 10, 1938.)

J. W. McDONALD and McDONALD & BOAZ for appellant.

STEVE WILEY for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Clarence O. Meacham, an employee of the Fulton Ice Company, received an injury in an accident which arose out of and in the course of his employment. He fell from the top of a railroad refrigerator car which he was icing, and fractured his skull and injured his left arm to such an extent that it is practically useless.

The company paid him compensation at the rate of $9.75 a week from June 27, 1935, to November 30, 1935. After the payments ceased, he filed his claim with the Compensation Board, which awarded him compensation at the rate of $7.31 a week for a period of 315 weeks from November 30, 1935. The board found that Meacham's average weekly wage was $15, and that he was totally disabled, but that 25 per cent. of his disability was due to pre-existing disease. The company filed a petition for review in the Fulton circuit court, where the award of the Workmen's Compensation Board was affirmed.

The appellant, in its brief, discusses three questions: (1) The nature and extent of the claimant's disabilities resulting from the traumatic injury complained of; (2) how much of these disabilities are the result of the traumatic injury and how much are the result of pre-existing disease; and (3) the amount of his average weekly wage. The substance of appellant's argument is that the board's award in these respects is not supported by any competent evidence.

It is not denied that the injuries received by the appellee were of a serious nature, and the medical proof introduced by appellant shows that he was totally unable to perform manual labor which requires the use of both of his hands. Meacham testified that his physical condition prior to the injury was good, except that he suffered headaches at intervals; that he was a common laborer, and was not equipped to do any kind of skilled labor. He had been trained as a lumber grader, but is now unable to perform that kind of work or to do any kind of manual labor. At the time he was injured, he was working as an extra hand for appellant for 25 cents an hour, but had no regular hours of work. Those who were regularly employed in the same character of work worked ten hours a day and six days a week. After he received the head injury, he was unable to maintain his balance. About 20 years before the accident he had vertigo, but recovered and was in good health until the date of the accident in 1935. Dr. M. W. Hawes testified that he had examined Meacham since his injury and had made an X-ray picture of his forearm and hand on March 26, 1936; that Meacham had sustained a fracture to his left forearm and hand near and into the left joint of the radius and styloid process of the arm, which he described in detail; that there had

been no improvement in the condition of the forearm since the making of the X-ray; and that, in his opinion, there would be no improvement over the present condition. The condition of his arm renders him unable to do any hard manual labor. When subjected to an equilibrium test known as the ''Romberg test,'' Meacham did not fall, but staggered to a certain extent. Dr. Glenn Bushart testified that Meacham had practically a complete loss of function of the left forearm and hand. He had an old Colles's fracture of the left wrist which had been very poorly approximated, and there was considerable atrophy of the muscles of the forearm, wrist, and fingers. On the left side of his face he had an area of parathesia which the physican attributed to the fractured skull. Both physicians attributed the loss of equilibrium, the severe headaches of which Meacham complained, and the paralysis of the side of his face to the head injury. Dr. Seldon Cohn, who was introduced by the appellant, testified that the injury to appellee's hand and arm constituted a 35 per cent, or 40 per cent. disability as far as his earning capacity was concerned. Considering all of his injuries, the percentage of his disability to his body as a whole, in the opinion of the witness, was about 50 per cent. Other physicians introduced by appellant fixed appellee's disability at 35 per cent. to 50 per cent. to his body as a whole. Dr. Hawes placed the percentage of disability between 50 per cent. and 75 per cent., and Dr. Bushart fixed it at 75 per cent.

Appellant argues that, since none of the physicians fixed appellee's percentage of disability greater than 75 per cent., there was no evidence authorizing the board to find that he was totally disabled. The evidence shows that appellee was not fitted to perform any kind of work except manual labor, and he testified that after the accident he was unable to do any kind of manual labor, and some of the physicians testified that he was unable to do any kind of manual labor which required the use of both of his hands. It is apparent from the record that Dr. Hawes, in fixing appellee's disability at 50 per cent. to 75 per cent., and Dr. Bushart, in fixing it at 75 per cent. were referring only to the disability resulting from the injuries and not to any disability resulting from pre-existing disease. The board found the 75 per cent. disability due to the injuries, and there was some evidence to sustain this finding. There was

little, if any, evidence authorizing a finding of disability due to pre-existing disease, but that finding is not material, since there was evidence tending to show disability resulting from the injuries to the extent found by the board.

It is conceded that appellee was paid 25 cents an hour, and that those who were regularly employed worked 10 hours a day; but it is argued that, since appellee did not work regularly, his compensation should be based upon his actual average weekly earnings, which were not more than $5 per week. The term "average weekly wage," as used in section 4905 of the Kentucky Statutes, means the average weekly wage actually earned during the time the employee was actually employed, reckoning wages earned while working full time, Benito Mining Company v. Girdner, 271 Ky. 87, 111 S. W. (2d) 571, Jones v. Davis, 246 Ky. 293, 54 S. W. (2d) 681, and the words "at full time" mean "a full working day for six days in every week of the year." Benito Mining Company v. Girdner, supra (page 573); American Tobacco Company v. Grider, 243 Ky. 87, 47 S. W. (2d) 735; Chatfield v. Jellico Coal Mining Company, 205 Ky. 415, 265 S. W. 943, Beaver Dam Coal Company v. Hocker, 202 Ky. 398, 259 S. W. 1010. The board followed the rule adopted in these cases in ascertaining the average weekly wage of appellee.

Some point is made of the fact that subsequent to the accident Meacham obtained employment as a watchman at a lumber yard, and it is argued that this shows he is not totally disabled. Total disability does not mean absolute helplessness. Olson v. Triplett, 255 Ky. 724, 75 S. W. (2d) 366. The evidence shows that appellee is unable to do manual labor, the only kind of work he is fitted to perform, and the fortuitous circumstance that he was able to obtain employment as a watchman, probably temporarily, should not defeat his claim.

There is competent evidence to support the board's award, and the judgment is accordingly affirmed.