## Lexington Mining Co. v. Richardson et al.

March 25, 1941.

Murray L. Brown for appellant.

H. N. Dean for appellee.

Opinion of the Court by Stanley, Commissioner— Affirming.

The only question is whether the method adopted by the Workmen's Compensation Board for ascertaining the average weekly wage of a workman as the basis for an award for total and permanent injury is proper.

The appellee, Delles Richardson, was injured on the tenth day of his employment as a coal loader by the Lexington Mining Company. His compensation was 40 cents per ton of coal loaded. He reported for work every day, but because of conditions in the mine over which he had no control he was obstructed and delayed, so that his total earnings for the ten days were only $10.66. If he had been able to work eight hours a day, as he was supposed to, he could have loaded the same amount of coal in 3½ days. The Referee, Hon. William R. Gentry, computed Richardson's average weekly wage by dividing the total sum earned by 3½, and multiplying the result by 6, thus arriving at $18.24. The award was 65% of that sum, that is $11.87 a week, for a period of 416 weeks. The Board and the Circuit Court approved the method and affirmed the award.

It is the contention of the appellant that where an employee has worked six or more days as a piece worker, his actual daily earning should be regarded in computing his average weekly wage, which is the basis of calculation of compensation. Section 4905, Kentucky Statutes. It argues that under the terms of his employment the appellee could go to work and quit work whenever he pleased; that the evidence shows he had done so, though it is admitted that part of the time the mining machinery or equipment was out of order and there was no coal cut for him to load. It is said that accidents and delays in mining operations are to be expected, with the consequent discontinuance of work, and these are conditions assumed by an employee as an incident of his employment. If this were not so, it is argued, the employer of a piece worker would become a guarantor of his facilities and machinery being operated with-

out interruption. Appellant, therefore, insists that the amount actually earned in ten days by Richardson should form the basis of computation. This would result in the award of $3.90 a week based upon average earnings of $6 a week.

The basis of computation prescribed by Section 4905, Kentucky Statutes, is, "the average weekly wage earned by employee at the time of injury, reckoning wages as earned while working at full time." Our consistent interpretation of the statute is that it means a full working day for six days in every week of the year regardless of whether the employee actually worked all or part of the time. American Tobacco Company v. Grider, 243 Ky. 87, 47 S. W. (2d) 735; Black Mountain Corporation v. Adkins, 280 Ky. 617, 133 S. W. (2d) 900. Thus, where a miner earned $5 to $6 a day when he worked, but in eight months next preceding his injury he had actually earned an average of only $18.41 a week because of the mine not being operated, we held the proper basis for calculating the award should be $30 at least. Chatfield v. Jellico Coal Mining Co., 205 Ky. 415, 265 S. W. 943.

We do not read the record as establishing that Richardson was at liberty to work only when and so long as he pleased, or that he was a piece worker in the strict sense. He was a regular employee and expected to be on the job the usual number of hours when the mine was being operated. We apprehend that had he only occasionally showed up for work, as he might have chosen, he would soon have been without a job. The measure of his pay was tonnage loaded rather than time worked, and, yet, since the factor of "full time" is prescribed by the statute for measuring the award to which an injured employee is entitled, full time must be regarded as a component element in reckoning his wages as the basis. It is exceptional that an employee is injured so soon after he goes to work and that the standard fixed by the statute proves to be not sufficient or equitable. When such an exceptional or unusual case does arise, the best that can be done is to regard the situation realistically and apply the standard to it. That was done in the first case in which we defined the term "full time" prescribed in Section 4905 of the Statutes to mean a full day for every day in the week rather than only the time for which employment was offered or opportunity

to work was afforded, because an uninjured laborer may work the remainder of his life while an injured man receives compensation for only a limited time. Beaver Dam Coal Company v. Hocker, 202 Ky. 398, 259 S. W. 1010. Likewise, where a man similarly employed as a coal loader on a tonnage basis had worked only one full day and earned only $1.30 before he was injured, saying, "It is not conceivable that his 'average weekly wage' can be arrived at and determined by his wages for one day." Jones v. Davis, 246 Ky. 293, 54 S. W. (2d) 681, 683. In that case we held the better and proper way was to look to a former employment by the same company on the same basis to ascertain the base rate of earnings.

A case closer to the one at bar is Benito Mining Company v. Girdner, 271 Ky. 87, 111 S. W. (2d) 571. A coal loader working for 49 cents a ton of coal loaded had worked one-half day and earned $1.98. He was injured on the second day after working three hours in which he loaded five tons of coal. These earnings afforded the only basis for computing his average weekly wage, and we held it sufficient to enable the Board to fix it with some degree of certainty. Referring to the liberal construction of the Workmen's Compensation Act as essential to effectuating its purpose of extending financial protection to workmen and their dependents, we expressed the view that the legislature, in establishing the basis of computation, had in mind the hardship which would result if the average weekly wage should be limited to the amount actually earned by the employee when he had worked less than a week at the time of his injury. We, therefore, affirmed the judgment which confirmed an award of the maximum compensation for the death of the employee of $12 a week to his dependents. The appellant submits that since the court in that case approved the use of the time actually worked and the sum actually earned, we should use the same basis here, that is $1 a day for a week, and that the Board should not have speculated that Richardson would have earned a larger wage. The time element was limited in the Girdner Case but it afforded the logical conclusion that having earned a normal or reasonable sum in regular work for substantial portions of two days, the man's earnings would have been about the same throughout his full week. It seems to us to be just as logical to con-

clude that Richardson could have and would have earned $3 a day, as he, in fact, testified, had he not been obstructed throughout the week by temporary conditions in the mine over which he had no control. We think it is right to assume the conditions in the mine as described in the evidence were unusual, and logical to hold that measurement of the employee's earning capacity in his customary employment should not be controlled altogether by such temporary factors.

Appellant relies with confidence upon the ruling in Brisendine v. Skousen Brothers, 48 Ariz. 416, 62 P. (2d) 326, 112 A. L. R. 1089. A truck driver employed in road construction had worked intermittently, upon call, at an hourly wage, for a month and four days when he was injured. The statutory measure or test for ascertaining his compensation was the average wage paid during and over the month in which the employee was killed or injured. Other bases were provided if he had not worked a period of thirty days before the accident. The court held the base rate of wages was what the man had actually earned during the month, and denied his contention that it should have been what he would have earned had he worked forty hours a week, the maximum to which laborers were limited. Passing over the thought that such irregular working time was perhaps normal in the job, we distinguish the decision from the case at bar because the Arizona statute did not prescribe "full time" as the factor to be regarded. Closer to our statute is that of New Hampshire, Pub. Laws 1926, c. 178, Section 19, which provides in case of death of a workman leaving dependents the amount of compensation shall be "equal to one hundred and fifty times the average weekly earnings of such workman when at work on full time during the preceding year during which he shall have been in the employ of the same employer." In Cote v. Bachelder-Worcester Company, 85 N. H. 444, 160 A. 101, 82 A. L. R. 1239, the employer contended that regard should be had for the fact that full time during a period of depression may be less than when business is good, and, also, that if in a given period an employee worked all the time there was work for him to do he worked full time. The court recognized the force of the argument but held that by popular usage "full time" in an industrial community has acquired definite significance, generally understood as referring to the

normal and customary period of labor per day or week in the establishment where the man is employed for the kind of work which he is hired to perform, and that such concept should control, the same having been regarded for twenty years in administering the statute.

It must not be overlooked that the object of the statute is to compensate the workman for loss of his earning capacity; that the rule of measurement laid down in the statute is to establish his earning capacity in the job he had; that it is the means to an end, and not the end itself. The several Workmen's Compensation Acts throughout the country differ in rules and methods to be used (see 71 C. J. 798), but all seek to establish the same basic fact. Here is a man twenty-one or twenty-two years old, in good health and strength, who actually earned only $1 a day during the abnormal period of service. Reality would be ignored and common knowledge discarded were it to be adjudged that that was the limit of his earning capacity as a coal loader. Though the method adopted in this case is novel, we think the Board was warranted in using it under the peculiar circumstances and that the award is justified by the law and the facts.

The judgment is affirmed.