BITUMINOUS CAS. CORP. v. JOHNSON et al.

Court of Appeals of Kentucky.
June 19, 1953.

Howard Van Antwerp, Jr., and Howard Van Antwerp III, Ashland, for appellant.

H. R. Wilhoit and Kibbey & Kibbey, Grayson, for appellees.

CAMMACK, Justice.

This is an appeal from a judgment of the Carter Circuit Court sustaining an award of the Workmen's Compensation Board in favor of John Johnson. The claim was filed against Charles Sexton and was later amended to make L. Y. Suttles a party defendant. The Bituminous Casualty Corporation, Sexton's liability insurance carrier, intervened. The award and judgment ran against Sexton, Suttles and Bituminous. Bituminous has appealed and Johnson has filed a cross-appeal.

Sexton, owner and operator of a coal lease in Carter County, applied for and received from Bituminous a workmen's compensation insurance policy covering his liability to his employees in July, 1949. In November, 1949, he employed Suttles as foreman and Johnson, Suttles' son-in-law, as a coal loader. Both Suttles and Johnson signed Sexton's register. On December 25, 1949, Sexton and Suttles executed a writing, by which Sexton undertook to "lease" the mine to Suttles for one year. The agreement provided that Suttles would pay Sexton 50 cents per ton for all coal mined. Sexton agreed to leave $150 on deposit with Bituminous for compensation insurance, and Suttles agreed to carry and pay the premiums for compensation insurance on the miners. The contract was renewable only at the option of Sexton.

After the execution of the writing Suttles sold the coal and paid the miners. On the other hand, Sexton continued to visit the mine almost daily, made safety inspections, gave directions to the employees, and arranged the employment of his brother, John Sexton, and his nephew, Junior, the only men hired after December 25. Sexton continued to pay the compensation insurance, social security and unemployment insurance, but collected the payments from Suttles. Suttles was constantly threatening to quit throughout the period. The mine was operated in this fashion until March 9, 1950,

when Johnson was injured in a slate fall. The next day Sexton reported the injury to the Board and to Bituminous as an injury to one of his employees.

Several weeks later, when an adjuster for Bituminous investigated the accident, Sexton gave him a copy of the December 25 agreement. Bituminous took the position that the agreement amounted to an assignment of the lease, terminating the employment relationship previously existing between Sexton and Johnson and creating a new employer-employee relationship between Suttles and Johnson. Although on April 20 it issued a change of rate endorsement on Sexton's policy, Bituminous undertook further to protect itself from any liability under Sexton's policy by writing Sexton on May 4, 1950, cancelling his policy as of December 25, 1949, for failure to notify Bituminous of the lease transaction. Sexton immediately protested and, when Bituminous sent him a check for the premiums and the $150 deposit, he refused to accept it.

Johnson filed his claim against Sexton on February 25, 1951, and by amendment made Suttles a party defendant on March 6, 1951. Bituminous intervened, denying that Johnson was an employee of Sexton and asserting that it was not liable as an insurer of Suttles since it had never consented to an assignment of the policy and had no knowledge of the sublease. Sexton filed a reply, denying that Bituminous was released and asserting an estoppel. Bituminous filed a reply to the reply, making up the issue before the Board.

After a hearing before the referee and on depositions the referee concluded that after December 25, considering the terms of the contract between Suttles and Sexton and the fact that neither had acted according to its provisions, the relationship between Sexton and Suttles was not lessor-lessee but contractor and subcontractor. The referee particularly relied upon Sexton's continuing control of the operation of the mine, including safety and employment. He also held that Johnson was not bound by the contract in any event, since he did not know of a change, if any, in the relationship between himself and Sexton. The referee made no finding on the question of whether Bituminous was discharged from liability to Sexton by the signing of the agreement, since he held that Bituminous was estopped by its letter of April 20, 1950, to deny liability to Sexton. These findings were sustained by the full Board. Bituminous appealed to the Carter Circuit Court, Johnson cross-appealed on the question of damages, and Sexton filed answers both to the petition and the cross-appeal. The circuit court affirmed the award.

On this appeal Bituminous makes the contentions that (1) Sexton is not liable as Johnson's employer; and (2) if he is, Bituminous is not liable as insurer, since Sexton's attempted assignment of the policy discharged the Company under the terms of the policy. Johnson contends that the contract of December 25, was never put into effect; or, if it was, it was soon revoked. He makes the further contention that, if the contract was not revoked, it was operative as a subcontract.

■ Bituminous would have us treat the agreement of December 25 as a clear-cut assignment of Sexton's lease, completely transferring the mine to Suttles and terminating any relationship between Sexton and Johnson. The difficulty with this contention is that no such clear-cut change of interest was ever contemplated by the parties and nothing like that ever took place. The evidence clearly supports the Board's findings that Sexton controlled the mine after the contract was executed, just as he did before, and that Suttles merely agreed to operate the mine for a while to see if he would be satisfied to continue under the contract. The opinion of the Board describes the relationship of Sexton and Suttles as that of contractor and subcontractor. We appreciate the contention of Bituminous that the characterization of Sexton as a "contractor" presents some difficulties. We do not think, however, that the Board's finding that Sexton was liable to Johnson was erroneous.

The cases cited by Bituminous, Eutsler v. Huff, 222 Ky. 48, 299 S.W. 1070, and Raponi v. Consolidation Coal Company, 224

Ky. 167, 5 S.W.2d 1043, are clearly distinguishable, because in those cases a clear-cut termination or separation of interest was made. But, in this case, Sexton continued to inspect the mine almost daily, to make surveys, and to make suggestions in regard to the mining operations. The employee situation remained the same, except that Sexton's brother and nephew were hired. We have noted that Sexton collected and paid over the workmen's compensation insurance, social security and unemployment insurance. In short, there was little change in the operation of the mine, except in the manner of paying the miners and compensating Suttles. Under these facts, we can not say that the finding of the Board that Sexton continued to be the employer of Johnson and liable to him as such was erroneous.

This is especially true since no change in Johnson's relationship with Sexton was brought home to him, regardless of what Sexton may have had in mind. The Board found that Johnson was not informed that he was no longer Sexton's employee. There was ample evidence to support this finding, and we believe the Board was correct in concluding that an employee does not have a duty to investigate every time the employer changes his method of doing business to determine what legal relationships were intended by the parties. Any other conclusion would conflict with the basic purposes of the Workmen's Compensation Act.

In Buchanan Mining Co. v. Henson, 228 Ky. 367, 15 S.W.2d 291, 292, Henson signed the register of the Mining Company, a partnership, and upon being injured filed a claim with the Board. After an award had been made, the Board set it aside on affidavits of the Buchanans that they had sold the mine to the Clay County Mining Company some months prior to the accident. The circuit court reversed the ruling of the Board and this Court, affirming the judgment, said:

" * * * A partnership cannot conduct a business and employ a man in the partnership name, induce him to sign its compensation register as its employe, and carry insurance for him as its employe, and then escape liability as his employer on the ground that prior to the injury it had sold out the business and consolidated with another company. * * *"

In Palmer v. Main, 209 Ky. 226, 272 S.W. 736, 737, Main was employed by Palmer as a janitor in a building. Palmer sold the building on September 2, 1924, and Main was injured September 17. In sustaining an award against Palmer, it was said:

" * * * The rule seems to be, as between the parties, the relation of master and servant does not necessarily terminate by the sale and transfer by the master to a third person of the property and business in connection with which the relation arose and exists.

"On the contrary, where there is no actual change in the management of the business, and it is continued in the same general way after the sale by the same servants and employees and the servants are in no way expressly or otherwise informed of the transfer and consequent change of proprietors, the relation is presumed to continue for a reasonable time, and the master remains liable to them to the same extent as though no sale or transfer had taken place * * *."

See also Schneider, Workmen's Compensation Law (Perm. Ed.) section 788.

The alternative contention of Bituminous, that even if Sexton is liable as employer, it is not liable as insurer, is also without merit. There is ample evidence sustaining the finding of the Board that Bituminous had notice of the change in operation, such as it was, effected by the December 25 contract. There was evidence showing that Bituminous knew of the arrangement even before Johnson was injured. It is unquestioned that, although Sexton freely disclosed the arrangement shortly after the accident, they continued for some time to treat the policy as being in force and assumed to defend Sexton as their insured. That is not to say that, in the absence of such notice, the nonassignment provision in the policy would have worked its discharge in this case. The insurer will not be relieved from its liability to a workman in-

jured at work covered by the policy at the location named in the policy merely because of an inconsequential change in the operations. We do not reach that question in this case, however.

■ On the cross-appeal, Johnson contends that the part of the judgment which affirmed the award of the Board on the questions of hospital and medical expenses and wage basis is erroneous. The Board limited hospital expenses to $500. Johnson contends he should have been awarded $800, the maximum amount allowable by the Board upon application within six months of the injury. No such application was made in this case, but Johnson contends that such an application is not required where the employer is not furnishing treatment, but is denying liability.

KRS 342.020 provides in part:

" * * * If the employer fails to furnish such treatment reasonably, he shall be liable for the reasonable expense, within the limits of this section, incurred by or on behalf of the employe in providing such treatments. * * *"

We believe that the use of the word "limits," instead of "limit," shows the intent of the legislature that, even where the employer does not furnish treatment, the $500 limit should apply where no application is made for an increase within six months, and the $800 limit should apply only where such application is made.

■ Johnson also contends that the Board erred in calculating its award on the basis of his actual earnings, instead of on what he could have earned if he had been working full time as a coal loader instead of in cleaning up the mine and getting it in shape for full production. Lexington Mining Company v. Richardson, 286 Ky. 418, 150 S.W.2d 889, cited by counsel for Johnson, involved an injury on the tenth day of employment. Here the employment had continued for some months. We do not think a calculation based on average daily wage was improper.

Judgment affirmed on the appeal and on the cross-appeal.