## Black Mountain Corporation v. Thompson et al.

Jan. 31, 1941.

J. B. Snyder for appellant.

Golden & Lay for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Thompson, a colored man, then sixty-one years of age, a coal loader in appellant's mines, was injured on May 23, 1938. Both had qualified under our Compensation Act, Kentucky Statutes, Section 4880 et seq., and it was stipulated that Thompson was injured in the course of employment, leaving the "only question to be determined by the Board, the extent and duration of plaintiff's injury."

In an opinion setting out facts and law conclusions, the referee found total permanent disability, recommending compensation at maximum rate of $15 per week, for a period of 416 weeks, the total not to exceed $6,000, with credit for sums theretofore paid. Appellant

seasonably moved for and was granted review, with the result that the Board adopted the referee's recommendation, and within due time appellant filed in the circuit court petition for review, setting up several grounds challenging the Board's finding of fact and application of pertinent statutes. The court affirmed the award. In brief appellant advances two propositions:

(1) The Board was not justified in allowing $15 per week, because appellee's proof did not show that he was earning such weekly wage as would authorize the allowance.

(2) The proof of appellee did not justify an award for other than partial permanent disability. Kentucky Statutes, Section 4899.

Thompson had been working for appellant for about eleven months. He had been a miner for many years, and was a good workman. In 1934, while working for another mine, he had suffered a broken leg, which injury laid him up six months. There was no effort to show, or a showing in the instant case that the former injury had anything to do with the later disability.

On the day of injury some one sent Thompson to take down a cut of coal which had been left in an entry. He procured a bar and undertook to prize the coal down, but it "held at the top." He continued his effort, and the coal "heaved" or "shot down" on him. He was down on his knees, and the coal "struck him on the head, knocked him down and covered him up." He estimated that the falling coal would weigh several tons. He was rescued, but the impact severely injured his back and four ribs. First aid was administered, and he was later taken to the company's hospital where he remained for about fifteen months.

Appellee testified that since his discharge from the hospital he had not been able to work, except that he "tried to rake some leaves," but this work so hurt his back and legs that he could hardly walk. He had earned no money since his injury. His only business or occupation was mining; he was uneducated and not equipped for other work.

As to wages, appellee did not show with exactness what his weekly wage was at the time of the injury. He

says he "was getting cars slow. I don't reckon I made over $6.00 any day, and not so much many a day. Never did get more than 8 cars." However, he did say that his daily wage would average $4. It was shown in proof that while working for the Coppers Coal Company, in 1934, his average weekly wage was around $33; this was after the injury to his leg. In his verified application to the Board he stated that his wage was "about $5.00 per day."

The record shows that following the injury appellee was sent to the hospital. According to his and Dr. Giannini's testimony he was discharged on September 1, 1939. Dr. Foley, in June of 1939, made physical examination of Thompson and made X-ray pictures. Thompson gave him a history of how his injury occurred, his ailments, suffering and wnat had been done for him in the hospital. Dr. Foley said that his pictures showed that the fifth lumbar vertebra had been fractured, so that it bent the spine to the left; that the second vertebra had been "crushed and mashed out," and the lower border of the first lumbar vertebra showed evidence of injury. He had considerable curvature caused by the mashing down of the vertebrae. As a result he had a stiff back; he could not bend over to "pick up and lift a load." He had little nervous disturbance in the legs and thighs, but his patella reflexes were lacking in both knees, which the doctor said indicated injury to the roots of the spinal nerves. He had lost sensation of pain on the outside of the thighs.

These conditions, according to the doctor, were permanent, and in answer to the pertinent question he said that while Thompson might do light work, his ability to make a living was reduced to nil; that his disability was 100 per cent., certainly from engaging in mine work; "his condition will prevent him from getting work." He did not think the condition could improve to any extent. Dr. Foley, as did other physicians, recommended "some activity" so as to improve his general condition.

Dr. Cawood, who examined Thompson at the request of appellant on December 6, 1939, after obtaining history, made X-ray pictures. He found injury only to the third lumbar vertebra. It was "pressed down about one-half." He found no trouble in the second or fifth

vertebra. He found his "flexes" fairly good; they "were not normal but sluggish."

This physician undertakes to account for a possible error in Dr. Foley's conclusions, saying, as did Dr. Giannini, that Thompson's spinal column was abnormal; a "novelty," since he had six lumbar vertebrae. Dr. Cawood concluded that Thompson's ability to labor was reduced to about 25 to 30 per cent. He admitted that there was "some curvature" and that his estimate of the disability was based on the showing that only the third vertebra had been injured, and no other pathology save the sluggish reflexes.

Dr. Giannini was in charge of Black Mountain Hospital, where Thompson was brought about May 23, 1938. He examined and took X-rays. He found the fracture of the third vertebra. He kept Thompson on a Bradford frame for about ten weeks. This is an appliance used to keep the weight from the spinal column, so as to assist healing. Afterwards he applied a plaster body jacket, kept on for about ten weeks, later a brace. In answer to a very leading question, he indicated that Thompson was discharged, "able to work," about September 1, 1939. He recommended "exercise, motion and activity, so as to bring about complete recovery." He thought his degree of disability would be "between 25 and 30 per cent." The foregoing is in substance the proof to the Board.

On the first point urged it is argued that, conceding without admitting, the board correctly found Thompson totally and permanently disabled, there was not sufficient proof of earnings to justify the maximum award of $15 per week. We have given the substance of Thompson's testimony in this respect, and upon which the Board based its findings. Counsel argues that better proof might have been offered, had Thompson requested the employer to furnish its pay roll, which may be taken as a suggestion that the employer's account might have contradicted the testimony of Thompson. In other words, with this competent proof, meager though it was, the employer took chances on having the Board accept it, and failed to introduce contrary proof. The presumption is that the withheld evidence would have supported Thompson. Huber & Huber Motor Express v. Martin's Adm'r, 265 Ky. 228, 96 S. W. (2d)

595. Appellant failed to introduce evidence, though the verified application for award put the employer on notice . that Thompson's daily earning was "about $5.00." There was also proof that Thompson, who had previously worked for another mining company, had earned for several months a weekly average of $33, this after he had recovered from the leg injury.

It is argued that a number of receipts signed by Thompson for several monthly payments, during the time he was in the hospital, totaling over $800, are to be treated as evidence that his wage did not equal $20 per week. It does not appear that these receipts are of such character as to be treated as evidence, and were not apparently so considered by the Board, and it is apparent from the finding of the Board that it considered the question of wages not to be in contest, since it was stipulated by parties that the "only question to be determined by the Board is that of the extent and duration of plaintiff's injuries." As claimed by counsel, the burden was on Thompson to show his wage, and in the absence of contrary proof the Board had the right to conclude that there was no controversy on that point, and to accept Thompson's testimony on this point.

On the second proposition it is argued the proof showed only partial permanent disability, therefore the Board should have made award under the last paragraph of Section 4899, Kentucky Statutes, which fixed the basic amount at less than 65 per cent. of $15, for a lesser period of time, and lesser maximum amount; this would follow if the Board incorrectly found permanent disability.

We need not reiterate the proof of the doctors on this question. The proof does show such an injury as that required fifteen months' hospitalization, under severe treatment for a portion of that time. While the doctors disagree on the question as to whether this or that vertebra was "mashed down" so as to cause curvature, they do agree that Thompson's spine was severely injured. Dr. Foley pronounced the impairment at 100 per cent.; the other doctors placed the degree very much less, thus a conflict of opinion. There seems to be little disagreement among the doctors as to the question of Thompson's inability to do manual labor in his usual work. They all agreed that in order to improve his

condition, or to prevent retrogression, claimant should engage in some activities, and that he might engage in "light work."

Since there was competent proof of Thompson's total permanent disability, under our repeated decisions we are precluded from undertaking to measure the weight of evidence, or to attempt to reconcile conflicts. In Inland Steel Co. v. Newsome, 281 Ky. 681, 136 S. W. (2d) 1077, 1079, we said:

"It must be borne in mind that neither this Court nor the Circuit Court was authorized to determine the weight of the testimony. So far as questions of fact are concerned, the sole function of the Courts in workmen's compensation cases is to ascertain whether the record discloses any competent evidence of probative value which supports the fact findings of the Board. So well settled is this principle that it is unnecessary to cite the numerous decisions of this Court sustaining it."

And in Searcy v. Three Point Coal Co., 280 Ky. 683, 134 S. W. (2d) 228, 232:

"We have repeatedly held that a decision of the Board on the facts will not be disturbed if there is any legal evidence to sustain it, no matter how strongly the proof may preponderate against the Board's finding.  *  *  *

"*  *  *  it is only where there is a total lack of evidence to sustain the findings of the Board that this court, or the circuit court, may reverse the findings of facts."

To these few citations might be added a host of others of like import, cited in Kentucky Digest, Volume 19, Key Number System 1939, under Workmen's Compensation.

The argument is that since the doctors all testified that Thompson could perform light work, and ought to be active for his improvement, the Board should have determined partial disability. This argument, according to our construction of the law in several opinions, is not of merit. In the recent case of Fulton Ice Co. v. Meacham, 273 Ky. 483, 117 S. W. (2d) 195, 197, we said:

"Some point is made of the fact that subsequent to the accident Meacham obtained employment as a watchman at a lumber yard, and it is argued that this shows he is not totally disabled. Total disability does not mean absolute helplessness. Olson v. Triplett, 255 Ky. 724, 75 S. W. (2d) 366. The evidence shows that appellee is unable to do manual labor, the only kind of work he is fitted to perform, and the fortuitous circumstance that he was able to obtain employment as a watchman, probably temporarily, should not defeat his claim."

In Leckie Collieries Co. v. Branham, 275 Ky. 748, 122 S. W. (2d) 776, we held that total disability, within the meaning of the law, does not mean helplessness or entire physical disability, but loss of claimant's earning power as a workman, whether manifested in inability to perform work obtainable or inability to secure work. Applicable references are to be found in Consolidation Coal Co. v. Crislip, 217 Ky. 371, 289 S. W. 270; Ætna Life Ins. Co. v. Gullett, 262 Ky. 1, 89 S. W. (2d) 1; Jellico Coal Mining Co. v. Chatfield, 200 Ky. 842, 255 S. W. 842.

In view of the holdings in the cases cited, and applied to the instant case, we find no other course than to uphold the finding of the circuit court.

Judgment affirmed.