# Fayette-Jellico Coal Co. v. Simms.

Dec. 1, 1944.

Hiram H. Owens for appellant.

Pope & Upton for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CAMMACK —Reversing.

The following quotation from the opinion of the full Board aptly sets forth the question involved in this case:

"This case comes before us upon motion of the defendant for a review of an opinion of a Referee awarding the plaintiff compensation for permanent total disability. The plaintiff, a coal loader approximately fifty years of age, received a compound fracture of the right femur or thigh bone.

"The bone had broken through the skin and there were fragments of it along the side of the fracture. A Stamen pin and Thomas splint were applied to keep the bone in position, but an X-ray photograph subsequently taken showed that there was some overlapping of the bones and that the alignment was bad. Consequently, about two weeks after the pin and splint were applied, an open reduction operation was performed on the leg to remove the fragments of bone and the ends of the femur were brought together by the application of vitallium steel plates. An X-ray photograph was taken immediately after this operation and it revealed the position of the broken bone to be excellent and to be securely held by the plates.

"After this a cast was applied to the leg to further support it, and the leg was in good condition when the plaintiff left the Pineville Hospital about three weeks later. However, about ten days after the application of the vitallium plate plaintiff began to run a low grade temperature and the incision in the leg oozed a small amount of pus, but when he left the hospital the abnormal temperature and drainage both had practically ceased.

"Dr. Stacy, the operating surgeon, testified that about two weeks after the plaintiff departed from the hospital it was reported that his drainage had increased. An ambulance was sent to the plaintiff's home to bring him back to the hospital. Plaintiff refused to return to the hospital and refused on many other occasions thereafter. Instead of cooperating with Dr. Stacy he tinkered with the cast and created a greater infection. The condition of the leg became so bad that the plaintiff finally went to Middlesboro Hospital where Dr. Evans found it necessary to perform another operation upon him, to remove the steel plate, and to keep the plaintiff in his hospital for approximately six weeks.

"The plaintiff now hobbles around on crutches and is, in all probability, permanently and totally disabled from performing the heavy duties of a coal loader.

"In its petition for Full Board Review the defendant's counsel aptly says: One proposition remains for the Board and that is, separation of the disability due to trauma and the disability due to the conduct of this plaintiff. There has been no case called to the attention of the writer of this opinion in which the patient has so flagrantly refused to cooperate with the physician who had rendered him skilled treatment. The Board is always reluctant to penalize an injured man for failure to accept competent surgical or medical treatment because a mind racked with pain or under great stress should not be expected to cooperate in the same manner expected from an ordinary prudent man. The conduct of the plaintiff in this case strikes us as so arbitrary that it would be neither just to the defendant nor sound administrative policy for the Board to fail to penalize him for his conduct. It is difficult to apportion the disability caused by trauma and that caused by failure and neglect to follow competent surgical and medical treatment, but we believe that it would not be unfair to either

party to this litigation to conclude that a one-third (1/3) of the plaintiff's present disability was caused by his arbitrary refusal to cooperate with Dr. Stacy and the staff at the Pineville Hospital.

"In view of this conclusion the Board finds it necessary to modify the opinion of the Referee to this extent and to substitute the following for the award included in his opinion.

"Award

"Claimant is awarded compensation at the rate of $7.80 a week beginning on September 29, 1941, for a period of 335 weeks not to exceed the sum of $4000.00. Credit is allowed for the number of weeks for which temporary total disability was paid, but not for the number of weeks for which temporary total disability was paid, but not for the amount of such payments in excess of $7.80 a week. The weekly payments shall draw interest at the rate of 6% per annum from the time due until paid."

When Simms appealed his case to the Knox Circuit Court the judge found that he was totally and permanently disabled, and directed the Board to modify its award so as to allow him compensation at the rate of $7.80 a week for a period of 520 weeks. On this appeal the Company is insisting the amount of compensation fixed by the Board was correct, and that there is no basis for the judgment of the lower court. We believe the Company's contention is well grounded.

There is no appeal from the Board's finding to the effect that one-third of Simms' disability resulted from his refusal to cooperate with Dr. Stacy. In this connection we may say that the record supports this finding of the Board. The second paragraph of KRS 342.035 provides that no compensation shall be payable for the death or disability of an employee if his death is caused, or his disability is aggravated, caused or continued by his unreasonable failure to submit to or follow competent medical treatment or advice.

The only problem remaining for the Board was one of arithmetic, in view of the provisions of KRS 342.110. This section sets forth the manner in which compensation shall be calculated for permanent partial disability, aside from the injuries enumerated in KRS 342.105,

and it reads in part: "* * * The compensation paid therefor shall be 65 percent of the average weekly earnings of the employe but not less than $5 nor more than $12, multiplied by the percentage of disability caused by the injury, for such period as the board determines, not exceeding 335 weeks nor a maximum sum of $4,000. * * * ". Simms' earnings were such as to authorize compensation at the rate of $11.70 a week had he been entitled to compensation for total permanent disability. The Board fixed his compensation at $7.80. Under the express terms of the foregoing quotation from KRS 342.110, the period of permanent partial disability for an injury such as the one in question is limited to 335 weeks.

Counsel for Simms contend that he has been penalized both as to time and wages. In this they are in error. It may be true that Simms is totally and permanently disabled, but as we have already said the Board was justified in attributing one-third of his disability to his own acts in failing to cooperate with Dr. Stacy. This required that his compensation be determined in accordance with the provisions of KRS 342.110. As we have already pointed out, the Board followed the requirements of that section.

Judgment reversed, with directions to set it aside, and for the entry of a judgment in conformity with this opinion.