**Helen Rankin SHAW, Appellant,**

v.

**SIPPI PRODUCTS etc., Appellees.**

Court of Appeals of Kentucky.

Nov. 4, 1966.

Rehearing Denied March 24, 1967.

James E. Story, for appellant.

Earle T. Shoup, Paducah, for appellee, Sippi Products.

J. Keller Whitaker, Frankfort, for appellee, Workmen's Compensation Bd.

HILL, Judge.

The opinion and order of the Workmen's Compensation Board denying appellant's claim for compensation was upheld by the circuit court. Claimant appeals to this court.

Appellant worked for appellee Sippi Products from 1957 until 1964 as a day laborer in the manufacture of pottery products at Paducah, Kentucky. She worked steadily the last three years of her employment. Her duties involved the finishing of clay lamps and necessitated the use of a wet sponge to smooth the surface; she removed all blemishes and seams from the lamp base in what is known as the green or raw stage before glazing. Chemicals were used in preparing the clay, but this record does not disclose the name or character of them.

During the year 1960, a "breaking out" commenced on appellant's hands, which her doctors diagnosed as "contact dermatitis." She continued to work until April 10, 1964. Claiming her condition "became affected by reason of an accident or disease arising out of and in the course of her employment," she filed application for compensation on March 9, 1965.

Keeping in mind the scope of review vested in this court by KRS 342.285 (as amended in 1964) and announced in Lee v. Inter-

national Harvester Company, Ky., 373 S.W. 2d 418 (1963), we examine the record to determine whether or not the evidence was so "clear-cut and convincing that we could justifiably conclude that the Board acted erroneously as a matter of law" in disallowing appellant's claim for compensation.

Dr. Joseph R. Miller, a general practitioner, testified for appellant. Dr. C. M. Blanton of Paducah, a dermatologist, testified on behalf of appellee.

Dr. Blanton examined appellant in April and November of 1960. He requested a sample of the clay products with which appellant worked for the purpose of running tests thereon, but he was never furnished with a sample. The net result of his testimony was that appellant's condition "possibly" was work-connected. He said: "It is possible, yes, but not probable." He was also questioned and answered as follows:

"Q. Were you ever able to determine what was causing it?

"A. No, not exactly. In other words, I could not prove it. I knew it was a contactant. It might have been what she was working with, and then it could have been other things, too, but I never was given the chance to prove definitely what it was caused by."

It is considered advisable, due to the fine distinctions contained in our case law in the matter of judicial review in compensation cases, to quote at length from the testimony of Dr. Miller:

"Q. Dr. Miller, would you tell the board whether or not in your opinion, based upon reasonable medical evidence and history that you obtained in this case, whether this condition was the result of her occupation?

"A. In my opinion or it was my opinion in 1962 that her condition was due to an allergy to the products she used in her occupation and I haven't changed my mind since then."

\* \* \* \* \* \*

"Q. You stated that your final diagnosis was that this lady was suffering this rash or reaction because of an allergy to the products with which she worked?

"A. That's right.

"Q. That was an inherent and inborn sensitivity of this woman to these things?

"A. Thats (sic) right."

On cross-examination Dr. Miller was asked and answered as follows:

"Q. You couldn't state with medical certainty or with reasonable medical certainty that it is absolutely due to one, two or three specific things?

"A. I have never said that. I said it was possibley (sic) from clay products, I have not given her tests because I have no way of doing tests."

The preceding testimony of Dr. Miller presents the troublesome question of whether the evidence of Dr. Miller, along with appellant's evidence, was so clear-cut and convincing that we could justifiably conclude that the Board acted erroneously as a matter of law. It should be noted that appellant testified her trouble began in 1960, three years after she commenced work for appellee.

A fair evaluation of the evidence of Dr. Blanton gives us this result: It was possible that appellant's disease was work-connected "but not probable." This is a clear and unequivocal expression of opinion by Dr. Blanton that it was "not probable" that appellant's disease was work-connected. His evidence presented an issue that must be left to the fact-finding board to resolve.

Appellee makes a vicious attack on the testimony of Dr. Miller because he stated on cross-examination, "it was possibly from

clay products" that appellant developed the disease complained of. Of course, the probative value of this part of his testimony was seriously impaired, but it is unnecessary to belabor this point for, considering the whole of his testimony, we think Dr. Miller intended to and did testify that in his opinion appellant's disease was work-connected.

 It is our conclusion a real factual situation was presented by the evidence, and we cannot say the Board's order was clearly or otherwise "erroneous on the basis of the reliable, probative, and material evidence contained in the whole record." See Miller v. Olin Mathieson Chemical Corporation, Ky., 398 S.W.2d 472; Lewis v. United States Steel Corporation, Ky., 398 S.W.2d 490; and Kelly Contracting Company v. Robinson, Ky., 377 S.W.2d 892.

■ Considerable space was devoted by both parties to this litigation in their briefs to that part of the judgment of the circuit court wherein the court observed:

"As a matter of fact, this Court is of the opinion that the net result of the Board's order finds support in the record on two other bases, to wit, the record does not show conclusively that the plaintiff was disabled, and a serious question is raised regarding the timeliness of the notice given by the plaintiff to her employer."

This observation or opinion of the trial court was unnecessary to an affirmance of the order of the Board. The fact remains the judgment appealed from clearly affirmed the Board, and it makes little difference what ground the trial court assigned for so doing. See KRS 342.285 and Entwistle v. Carrier Conveyor Corporation, Ky., 284 S.W.2d 820.

There is other evidence to be found in the record tending to support the finding of the Board; that is, the circumstances surrounding the termination of appellant's employment by appellee. She testified in

a hearing before the Unemployment Compensation Commission that she left appellee's employment to get married. In said proceeding before the Unemployment Compensation Commission, she admitted by implication that she was not disabled when, in reply to question by the referee regarding the obtaining of other employment, she said: "No. I've been looking for work though. I've been trying to." The weight of this evidence may have been light; but the scales to determine that weight have been placed by the Legislature in the possession of the Workmen's Compensation Board, not in the courts.

The judgment is affirmed.