**LOOKOUT COAL COMPANY, Inc., Appellant,**

v.

**Lonzie Lee WILLIAMS et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 16, 1968.

**592**

Craft & Haynes, Hazard, for appellant.

Kelsey E. Friend, Friend & Mullins, Pikeville, Stuart E. Alexander, Louisville, Workmen's Compensation Bd., Martin Glazer, Thomas R. Emerson, Frankfort, for appellees.

STEINFELD, Judge.

Lonzie Lee Williams' occupation was that of a coal loader in the mines. In performing his duties he loaded cars with a shovel, which together with the coal thereon, weighed up to 50 pounds. He claims that about noon on June 20, 1966, while he was attempting to put a shovelful of coal into a car in the mines of his employer, Lookout Coal Company, he felt a severe pain in the lower part of his back near his belt line. He continued to work that day and returned to the mines the following day when he notified Lookout of his injury. On June 22, 1966, he saw Dr. W. F. Clarke.

He did not return to his employment until sometime between July 7 and July 11, 1966, when he worked only one day. He said, "I found out they hadn't made the report and I quit. I didn't want to work for people like that."

On July 11, 1966, he went to work for Clevinger and Sweeney Coal Company but continued only about three days (there is some testimony that he may have worked until August 29, 1966).

On the 7th day of July, 1966, he filed a claim with the Workmen's Compensation Board whereby he sought an award against Lookout. He did not make Clevinger and Sweeney a party. The parties stipulated that Lookout had accepted the provisions of the Workmen's Compensation Act and that it had notice of the alleged injury. There is no dispute as to the amount of the award. A part of his testimony before the Board was as follows:

"Q. You went to work for Clevinger and Sweeney on July 11?

A. A day or two after that.

Q. Have you continued to work for them?

A. I hurt my back again when I tried to stand and load again.

Q. When was that?

A. It was about the 3rd day of last month.

Q. The same thing happened to you as it happened while you worked for Lookout?

A. Yes.

Q. You were doing the same type of work?

A. Yes.

Q. And it was the same type of injury?

A. Yes."

On redirect examination he said that when he returned to his work at Lookout

about July 11 he was having pain in his back but that he tried to work and couldn't because the pain got worse. He also said that when he was employed by Clevinger and Sweeney he was still having pain and that he was unable to continue working for that company. He was asked and answered as follows:

"Q. 10   When you tried to work for the last employer, what happened to your pain?

A.       Got worse all the time.

Q. 11   You don't have no new injury then would you?

A.       No, it is the same old injury."

Dr. W. F. Clarke was the attending physician. He diagnosed Williams' condition as "chronic lumbo-sacral strain". He concluded that the present disability was the result of the injury which occurred on June 20, 1966.

Dr. J. Hunter Smith testified that Williams had a mild radiculitis of the right sciatic nerve with a chronic lumbosacral sprain. Dr. Smith also said that he had examined x-rays of Williams and that "L–5 is just a little depressed" and that this was a defect of congenital nature which was such that could be aroused into disabling reality as a result of trauma. Lookout moved the Board to make the Special Fund a party. KRS 342.120. The motion was sustained and pursuant to KRS 342.121 the Board appointed Dr. K. Armand Fischer to examine Williams. Dr. Fischer reported that the x-rays he had taken of Williams' spine were inconclusive, however, in answering questions propounded by the Board the doctor made it clear that he found no active disability which Williams had suffered prior to June 20, 1966, and that he found no latent non-disabling disease or other condition capable of being aroused or brought into disabling reality by reason of the traumatic injury which may have occurred on June 20, 1966. Lookout filed exceptions to this report. KRS 342.121(4).

Dr. T. R. Miller testified and said it was his opinion that the disability was congenital in nature and he described it as a mechanical weakness. He said that this defect or weakness was of the type that could be described as having been dormant or latent and non-disabling prior to June 20, 1966, but capable of being aroused into disabling reality by reason of the subsequent injury.

The Board dismissed the Fund, found Williams to be totally and permanently disabled as a result of the injury of June 20, 1966, and awarded him total disability against Lookout.

Lookout filed a timely appeal in the circuit court claiming that the Board had erroneously dismissed the Special Fund and had erroneously imposed the entire award upon Lookout.

The court sustained the Board and Lookout has appealed. It says that the Board erred in finding that Williams was totally and permanently disabled as a result of the alleged injury of June 20, 1966. It contends that there was a pre-existing condition and that there was a subsequent injury. It argues that the Board erred in dismissing the Special Fund.

In considering these contentions we must keep in mind that where there was conflicting evidence of probative value before the Board, its findings of fact will not be disturbed by the courts. Miller v. Olin Mathieson Chemical Corp., Ky., 398 S.W.2d 472 (1965).

Appellant relies upon Cabe, Commissioner of Labor et al. v. Splash Dam By-Products Coal Corporation et al., Ky., 416 S.W.2d 361 (1967). Splash Dam does not support this contention for there we found no conflicting evidence and that "The testimony of all of the physicians, with the exception of Dr. Henderson, is non-committal as to whether a disability or condition pre-existed the injury and was aroused by it." Here we have conflicts,

therefore, the finding of the Board shall stand. Shaw v. Sippi Products, Ky., 411 S.W.2d 926 (1967).

The judgment is affirmed.

All concur.