John W. YOUNG, Commissioner of Labor, Commonwealth of Kentucky & Custodian of the Special Fund, Appellant,

v.

MILL BRANCH MINING COMPANY et al., Appellees.

Court of Appeals of Kentucky.

Dec. 13, 1968.

**454**

Martin Glazer, Thomas R. Emerson, Department of Labor, Frankfort, for appellant.

William J. Baird, Edward R. Hays, F. Dale Burke, Joseph W. Justice, Pikeville, for appellees.

WADDILL, Commissioner.

The Kentucky Workmen's Compensation Board entered an award in favor of Thorney Jack Senters, who was seeking workmen's compensation benefits against his employer, Mill Branch Mining Company. The Special Fund was made a party defendant during the proceedings before the Board (KRS 342.120, 342.121). The Board found that Senters had sustained a compensable injury on June 21, 1966, which resulted in his being totally and permanently disabled. The award was based upon the following "findings of fact":

"1. * * * all prerequisites to compensation benefits, if any be due, have been stipulated, leaving in consideration only the extent and duration of disability.

"2. The lay and medical testimony of record strongly militates to a conclusion of permanent and total disability in this claimant, resulting from the asserted traumatic injury of June 21, 1966. The evidence further indicates no pre-existing disability or a dormant condition aroused into a disabling reality or any circumstances which would justify the imposition of any part of this disability award against the defendant Special Fund.

"3. The report of the disinterested physician, Dr. T. Rothrock Miller, is unproductive and unresponsive to the questions propounded by this Board and at complete variance with the relatively uncontroverted lay and medical testimony elsewhere adduced of record. Consequently, the objections propounded by plaintiff to Dr. Miller's report are sustained and we have considered the entire record in reaching our designated findings of fact and conclusions of law."

The Board concluded, as its "rulings of law," that "the claimant has satisfied his evidentiary burden of proving a permanent and total disability, all of which is attributable to the asserted traumatic injury and no part thereof to a pre-existing condition or disability." The Board dismissed the claim against the Special Fund and entered the aforementioned award.

The Mill Branch Mining Company took an appeal to the Pike Circuit Court where a judgment was entered remanding the case to the Board with directions to set aside the award against the Mill Branch Mining Company and to enter a new award assessing the entire payment of Senters' compensation benefits for permanent total disability against the Special Fund.

On this appeal it is contended on behalf of the Special Fund that, since the Board's finding that Senters' permanent total disability was solely caused by the traumatic injury he sustained while at work is sup-

ported by substantial evidence, the Board's finding is decisive of the question concerning which party is liable under our Workmen's Compensation Act. On the other side of the case the mining company urges that the medical testimony upon which the Board based the award conclusively shows that Senters' injury would not have been sustained nor would disability have resulted except for the fact that Senters had a dormant, non-disabling preexisting diseased condition which was aroused into disabling reality by the work-connected incident on June 21, 1966. Hence, it is argued that the circuit court correctly set aside the award against the mining company and properly directed the Board to assess the liability for Senters' disability against the Special Fund under KRS 342.-120.

We take a look at the evidence. Senters, thirty-four years of age, testified that he had been regularly employed as a coal miner since 1949 and had been able to perform manual labor until June 21, 1966, when he injured his back while helping remove some large rocks from the coal mine. Senters received conservative treatment to relieve the pain in his back and legs and after several days was advised by his physician to return to work and see how it affected his back. Senters stated he tried to work again in the mine but soon found that the pain in his back and legs was so intense that he had to quit.

Later Senters was examined and treated by Dr. W. C. Roland, an orthopedic surgeon, who was of the opinion that Senters had sustained a musculoligamentous strain from his rock-lifting episode. Dr. Roland stated there was no evidence of nerve root compression, nor of disc herniation, nor of disc syndrome. Dr. Roland attributed all of Senters' back pain to a genito-urinary infection, and stated that no functional disability had resulted from it.

Senters was also examined and treated by Dr. Russell Meyers, a neurologist, and by Dr. J. Hunter Smith, an orthopedic sur-

geon. Dr. Meyers testified that Senters has a definite radiculitis of the S1 nerve root on the left side and the presumption was that this condition was due to a herniated lumbar disc at the L5–S1 level. Dr. Meyers was of the opinion that the rock-lifting incident could not of itself have caused herniation of an intervertebral disc, and it was his further opinion that all of Senters' 100% disability was predicated upon a preexisting or degenerative condition which predated the lifting incident of June 21, 1966. Dr. Meyers concluded that Senters' disability would be permanent and irreversible unless it was reduced by a successful operation on his spine.

Dr. J. Hunter Smith diagnosed Senters' back condition as stemming from radiculitis and was of the opinion that Senters was physically unable to perform the duties required of a coal miner or to perform any arduous labors. When asked if he believed that the injury as related to him by Senters was sufficient to cause the symptoms that he found on his examination of Senters, Dr. Smith answered in the affirmative.

On cross-examination Dr. Smith was interrogated concerning whether Senters' back condition could have resulted from a strain superimposed upon a preexisting diseased condition. We quote some of the pertinent questions and answers:

"Q. It is not possible that in this particular case there is some nerve root irritation from these arthritic changes?

"A. I suppose that's possible.

"Q. Then if that is possible, could you say that his condition is that of a strain superimposed upon a preexisting condition, causing nerve root irritation and pain radiation?

"A. We could assume that. Of course, the best way to separate the sheep from the goats there would be as to whether or not this patient had any symptoms in this area prior to his injury. If he had some symp-

toms in this area, then I believe we could more readily assume that it could be superimposed.

"Q. Doctor, we are talking about a lifting incident, rather than a traumatic incident or accidental injury. Do you concur that protruding discs mostly occur from degenerative changes caused from wear and tear and weakness from the structure of the disc material, which is triggered by some lifting incident, rather than caused by some traumatic injury, unless that traumatic experience is sudden and abrupt?

"A. I believe I follow you, and I believe I agree with you, that there is usually some degenerative process taking place in the disc before the trauma is exposed to the disc.

"Q. So if there was some degenerative changes in the disc causing its weakness, and if there was and is some arthritic changes, then it could be a combination of both—the degenerative changes of the disc and the arthritis—which is causing nerve root pressure. Is that right?

"A. I would like to answer that by saying that we usually feel that before a disc herniates, that there is some degenerative condition occurring in the disc. Now the fact that the patient has some arthritis in L–5 would also give evidence that there would be some degenerative process taking place in this patient's back. Now if we then superimpose an injury onto this area that has already set the stage for this type disease, then the triggering trauma could simply set off everything that was set up.

"Q. Are you able to separate the sheep from the goats in this case?

"A. No, sir. As I testified before, only if this patient would have had some symptomology in this area would I be willing to state that there was a pre-existing condition enough to set up symptomology. If the patient had no symptoms prior to the injury, then I would want to reserve the right to say that the trauma was of no significance in setting this ball rolling."

■ It is evident from the cross-examination of Dr. Smith that he recognized that, usually before a disc herniates, there is some preexisting degenerative condition in the disc. While Dr. Smith testified in terms of possibilities concerning what could happen to persons having some diseased or degenerative process taking place in their backs who subsequently sustain a back injury, such testimony did not adversely affect the probative value of his unequivocal opinion that Senters' disability resulted solely from his employment injury. We quote his answers to questions upon which the Board rested its findings:

"Q. Did you reach a decision, based upon reasonable medical certainty, as to the cause of the radiculitis?

"A. Well, from the history that I obtained, the patient was injured while attempting to move a rock and hurt his back.

"Q. You feel that the injury as related to you by the patient was sufficient to cause the symptoms that you found in the patient?

"A. Yes, sir."

■ In these circumstances the findings of fact of the Board are supported by substantial evidence, and therefore are not "clearly erroneous." It is our time-honored rule that when medical evidence is in conflict, the decision of the Board is conclusive. Lookout Coal Company v. Williams, Ky., 424 S.W.2d 591; Byrd v. United States Steel Corporation, Ky., 411 S.W.2d 36. We apply this rule and, consequently, uphold the findings and award of the Board.

The judgment is reversed, with directions to set it aside and to enter a new judgment affirming the award of the Workmen's Compensation Board.

All concur, except MONTGOMERY, C. J.