**SOUTH 41 LUMBER COMPANY, et al.,**
**Appellants,**

**v.**

**Homer GIBSON, Appellee.**

Court of Appeals of Kentucky.

Feb. 28, 1969.

James M. Graves, Larry L. Johnson, William P. Swain, Boehl, Stopher, Graves & Deindoerfer, Louisville, for appellants.

Carroll Morrow, Moore, Morrow & Frymire, Madisonville, for appellee.

STEINFELD, Judge.

The Workmen's Compensation Board found Homer Gibson to be permanently partially disabled 40% to the body as a whole (KRS 342.110), but not totally disabled as he contended. KRS 342.095. On his appeal to the circuit court (KRS 342.-285) the board was reversed. His employer, South 41 Lumber Company, its insurance carrier and the board appeal. We reverse.

On September 9, 1966, with the use of a winch, logs were being loaded onto the truck Gibson had been driving. He was guiding the logs into position when he was hurt. Gibson was 54 years of age, of slight stature and at the time of the accident his normal weight was 120 pounds. He cannot read or write. He fractured his hip and elbow and developed a shoulder-hand syndrome which his physician described as "pain in the shoulder and pain in the elbow, and pain in the wrist and finger joints." He cannot raise an arm higher than "even with his breast."

Appellants' only claim is that the evidence before the board was not such as to require a finding of total disability, therefore, they contend that the court erred in remanding the case to the board and ordering it to award Gibson benefits for permanent total disability. Appellee argues that he was a common laborer doing hard work in the logging industry and that his disability completely prevents him from following his occupation.

The board is the "fact finding agency" and "is in the same position as a jury, and the same rules apply." Lee v. International Harvester Co., Ky., 373 S.W. 2d 418 (1963). Its decision must stand unless we are convinced "that the evidence before the board was so conclusive that it required a finding of permanent total disability." Joseph v. Blue Diamond Coal Co., Ky., 408 S.W.2d 467 (1966). Cf. Young v. Mill Branch Mining Co., Ky., 435 S.W. 2d 451 (1968).

Almost without exception, Gibson's occupation had been that of a common laborer in the logging industry. He had cut timber, dragged logs with the use of a team but primarily and generally he had driven a truck to haul the logs from place to place. On the date he was injured he was "driving a truck, loading logs".

At hearing before the board he stated that he believed he could drive a truck although he did not know. Three eminently-qualified physicians, two of whom had treated Gibson, testified. The third was appointed by the board to assist it in reaching the proper decision. (KRS 342.315). The medical evidence is partially conflicting but all of the doctors seem to agree that because of his size, his inability to lift heavy objects or to fully raise his right arm, and his general physical condition his opportunity to secure or hold employment in the category of his experience is almost non-existent. However, one physician testified that "there are certain aspects of a

job about a logging camp that he could do" and that he " * * * would anticipate no difficulty in his driving."

Another physician expressed the opinion that "Nobody will employ that man" but he conceded that if a truck was equipped with power steering he could drive a truck although the doctor believed that time would show that he could not operate it eight hours a day. Nevertheless, this same physician asked Gibson to return to work " * * * to determine whether he was able to do any work at this lumber company * * *".

One physician estimated that the claimant was impaired "between 25% and 30% to the body as a whole and that under the best of circumstances I think this might be expected to reduce itself by another 10% over a period of time." He expressed the opinion that there was no medical reason why Gibson could not return to "lighter" forms of work and that he could do work " * * * like driving a truck or something of this sort." However, this physician further stated that Gibson "would be 100% disabled from doing hard, manual labor."

A doctor said: "There are many jobs that this man can do. For example, he could get a job as a night watchman. He could get a job as a clean-up man in any number of plants, you see, or work of that sort, but skilled work or semi-skilled work, in which he is going to require the full use of this hand, the right hand and the right arm, he wouldn't be able to do properly." He deposed that "I would think that he would be able to drive a truck."

Gibson testified that he cannot "walk or stand for any long periods of time" and that if he stands "up very long (his leg) gets to hurting to where (he has) to go and sit down and then wait a while and (he) can get up and go again; but if (he goes) very far, (he) has to stop; can't make it." He stated that he can "pack something if it ain't more than 20 pounds; but all over

20 pounds (he) can't go with it." He claims his hand is so stiff he cannot use it.

■ After the accident Gibson performed some work such as stacking barrel staves, driving a truck in a hayfield for three days and picking up scrap metal at the city dump. He claimed that he had to give it up because he was "hurting so bad" he could not stand it. He said he was trying to earn a living, and that some days he made from $3.00 to $5.00 and others nothing. There is nothing in the record that contradicts this testimony and total disability does not mean absolute helplessness. Black Mountain Corporation v. Thompson, 285 Ky. 306, 147 S.W.2d 708 (1941) and Blue Diamond Coal Co. v. Phillips, 303 Ky. 693, 198 S.W.2d 799 (1947).

■ Appellee relies on Osborne v. Johnson, Ky., 432 S.W.2d 800 (1968), in which we said: "The real question is: How much less money can the injured workman command in the labor market?" Osborne is not applicable because the ruling therein was made prospective "to claims filed after the effective date of this opinion" which, of course, would be the date of the issuance of the mandate. We conclude that the case now before us is governed by the rule laid down in Leep v. Kentucky State Police, Ky., 366 S.W.2d 729 (1962) and Deby Coal Co. v. Caldwell, Ky., 383 S.W.2d 905 (1964), (which, with other cases, were partly overruled prospectively by Osborne v. Johnson, supra). Gibson's occupation was that of a "hard manual laborer". All of the medical testimony revealed that his functional ability to perform hard manual labor was destroyed. That being true an award predicated upon a disability of 40% to the body as a whole was contrary to conclusive evidence that Gibson was totally disabled. Fulton Ice Co. v. Meacham, 273 Ky. 483, 117 S.W.2d 195 (1938). Even so, for the reasons hereinafter explained, the board correctly did not award on the basis

of total disability and the court below erred in directing that it do so.

The appellants note that Gibson departed from the hospital without the approval of a physician and during the course of a physical therapy program. His doctor had advised him to take certain exercises and had fitted him with an orthopedic appliance. The testimony shows that Gibson failed to take those exercises and removed the appliance. KRS 342.035(2) in part reads as follows:

> "* * * No compensation shall be payable for the death or disability of an employee if his death is caused, or if and in so far as his disability is aggravated, caused or continued, by an unreasonable failure to submit to or follow any competent surgical treatment or medical aid or advice."

Testimony indicated that the failure of Gibson to comply with the prescriptions of the physicians apparently has contributed somewhat to the continuation of the disability. One physician stated that by continuing these treatments "* * * disability * * * would have been lowered probably to an estimated 25% to 30%."

It was proper for the board to consider the failure of Gibson to carry out the treatment which his doctor prescribed as bearing on the extent and duration of his occupational disability. Fayette-Jellico Coal Co. v. Simms, 298 Ky. 729, 183 S.W. 2d 947 (1944). The claimant's failure to follow medical advice authorized a reduction from 100% occupational disability, but the evidence on this subject did not justify the reduction to 40%.

The judgment is reversed with directions to re-examine the question of whether the failure to follow the instructions of his physician affected Gibson's occupational disability, and if so to what extent. Judgment shall be entered remanding to the board for an award consistent with this opinion.

All concur.