Millard OAKS, Appellant,

v.

BETH–ELKHORN CORPORATION, Special
Fund, et al., etc., Appellees.

Court of Appeals of Kentucky.

March 7, 1969.

Kelsey E. Friend, Friend & Mullins,
Pikeville, for appellant.

Harry C. Campbell, Pikeville, Thomas R. Emerson, Department of Labor, Frankfort, for appellees.

STEINFELD, Judge.

On February 14, 1966, appellant, Millard Oaks, filed his application for workmen's compensation benefits with the Workmen's Compensation Board. He sought from his employer and the Special Fund an award of maximum compensation for total permanent disability caused by an "injured back and chest, pneumoconiosis and/or silicosis." He was injured on the 12th day of May, 1965, when slate fell upon him while he was working in the mines of appellee, Beth-Elkhorn Corporation. He has not worked since that date.

The board denied compensation on the claim of "pneumoconiosis and/or silicosis" but concluded that Oaks was entitled to recover for temporary total disability from his employer for a short period and thereafter on the basis of permanent partial disability against his employer and the Special Fund. Insisting that he was entitled to recover for total permanent disability, Oaks appealed to the Letcher Circuit Court which affirmed the action of the board. The matter is now before us on an appeal from that judgment. We reverse.

Appellant concedes that his claim predicated on occupational disease is no longer subject to judicial review because there was conflicting evidence before the board upon which it reached its decision. We are therefore confronted only with the claim based upon the traumatic injury, and the results thereof.

Dr. J. Hunter Smith, an orthopedic surgeon, testified that Oaks was suffering from a 30% disability to the body as a whole and that part of this disability was due to an arthritic condition which was aggravated and brought into disabling reality by reason of the traumatic injury. He was unable to separate the portion of the disability which resulted from the arthritis and that from the injury, but he was convinced that Oaks could not return to his job as a coal miner. Oaks was 54 years old and had never engaged in any occupation except as an underground coal miner.

The board appointed Dr. K. Armand Fischer as examining physician. KRS 342.121. After an examination he reported that Oaks was suffering from a degenerative disc condition and a low back sprain, that he had some pronounced arthritic condition around the third and fourth cervical vertebrae and some minor arthritic condition in the low back. KRS 342.121(3). Oaks had sustained a previous injury and it was necessary for Dr. Fischer to consider the effect of that injury. He reported that Oaks "suffers 30 to 40 percent partial permanent disability to his body as a whole." In its opinion the board summarized part of Dr. Fischer's report as follows:

"In response to the question propounded to him by the Board, Dr. Fischer found that the plaintiff suffered a partial disability of 30% to 40% to the body as a whole, that 5% of this disability was due to an active disability resulting from prior injuries that the plaintiff had sustained in February of 1965; that 10% to 15% was due to the arousal of the spinal arthritic condition, and 15% to 20% was due to the injuries sustained in the May 12, 1965, accident. No exceptions were filed by any of the parties to Dr. Fischer's report, and since it is clearly responsive to the questions propounded to him by the Board, the Board adopts his findings and will make an award in conformity therewith."

It then found as a fact:

"3. That as a result of the traumatic injury sustained on May 12, 1965, the plaintiff suffered a period of temporary total disability from that date until July 31, 1965, and thereafter a permanent partial disability of 40% to the body as a whole, of which 5% was due to an active pre-existing disability, 15% of which

is due to a pre-existing arthritic condition which was aroused into disabling reality by reason of said injury, and 20% of which is due to the traumatic injury of May 12, 1965."

It made its award as follows:

"1. That the plaintiff, Millard Oaks, shall recover from the defendant, Beth-Elkhorn Corporation, the sum of $41.00 per week as temporary total disability for the period from May 12, 1965, to July 31, 1965, or 11⅗th weeks, and thereafter plaintiff shall recover from defendant employer the sum of $7.40 per week for a period of 388⅘th weeks, together with interest at the rate of 6% per annum on all past due and unpaid installments.

2. Plaintiff shall recover from defendant, Special Fund, the sum of $5.55 per week for a period of 388⅘th weeks, beginning July 31, 1965, together with interest at the rate of 6% per annum on all past due and unpaid installments; which payments shall be made by defendant employer and reimbursed by the Special Fund under the provisions of KRS 342.-120(4)."

█ Because no exceptions were filed to the report made by Dr. Fischer it is conclusive on all medical questions. Roaring Fork Coal Co. v. Wilder, Ky., 380 S.W.2d 271 (1964); Columbia Coal Co. v. Griffie, Ky., 425 S.W.2d 755 (1968); Whitis v. Southern Belle Dairy, Inc., Ky., 434 S.W.2d 645 (1968); Young v. J. S. Greer Meat Co., Inc., Ky., 438 S.W.2d 331.

Oaks' contention is stated in his brief:

"In the case at bar, the Board appointed physician found a permanent-partial disability to the body as a whole on account of the compensable injury of May 12, 1965, of 25 to 35%. Therefore, the Board had the responsibility, notwithstanding the fact that no exceptions were filed to said medical report, to consider all of the lay and medical testimony in transposing body functional disability to job disability, and since there is no controversy in the medical or lay testimony but what the appellant in the case at bar is totally and permanently disabled on account of his compensable injury of May 12, 1965, the Board must as a matter of law find that the 25 to 35% body functional disability renders the appellant 100% job disabled and that the apportionment of said 100% job disability should be between the appellee coal company, and the appellee, Special Fund on the basis of the body functional disability as found by the Board appointed physician."

He refers us to Dick v. International Harvester Co., Ky., 310 S.W.2d 514 (1958), in which we said:

"We approach the decision under the influence of the remedial principle of workmen's compensation and the development and progress of legislation to accomplish its humane and beneficent purpose. This is coupled with the express mandate of the statute that the Act 'shall be liberally construed on questions of law.' KRS 342.004. Therefore, any doubt as to its scope and application with respect to disabilities or injuries where the facts have been found must be resolved in favor of the workman or his dependents. All presumptions will be indulged to accomplish that end."

He argues that we have before us only a question of law because all testimony showed that Oaks could not resume his mining occupation. He cites many cases including Deby Coal Co. v. Caldwell, Ky., 383 S.W.2d 905 (1964) and Leep v. Kentucky State Police, Ky., 366 S.W.2d 729 (1962).[1] Other cases holding that "All of the medical testimony revealed that his functional ability to perform hard manual

---

1. Osborne v. Johnson, Ky., 432 S.W.2d 800 (1968), overruled Deby and Leep prospectively. Oaks' injury occurred before the Osborne mandate was issued. Also see Stalker v. Hawkins Bros. Coal Co., Ky., 434 S.W.2d 812 (1968).

labor was destroyed." are South 41 Lumber Company v. Gibson, Ky., 438 S.W.2d 343 (decided February 28, 1969) and Crib Diaper Service v. Standifer, Ky., 436 S.W.2d 501 (decided January 28, 1969).

Here, as in Whitis v. Southern Belle Dairy, Inc., supra, "the appointed physician did not undertake to express the claimant's functional disability in terms of the kinds of physical functions the claimant could not perform, but instead limited his opinion to a statement" that Oaks "now suffers * * * 30 to 40% partial permanent disability to the body as a whole". Here too we hold that the opinion of the appointed physician " * * * was not such as to require any specific conclusion as to the claimant's ability to perform the essential tasks of his usual occupation * * *", that of a coal miner. The report of Dr. Fischer did not bind the board " * * * in its determination of the extent of (Oaks' occupational disability * * *". Whitis v. Southern Belle Dairy, Inc., supra.

Dr. W. C. Hambley said: "I don't think he could do this employment in dust conditions, or underground coal mining employment. * * *. This man can't do any manual labor". However, Dr. Hambley stated that Oaks' condition was the result of silicosis. It should be noted that on conflicting evidence the board found that he was not suffering from silicosis.

Dr. J. Hunter Smith stated: "I don't believe that this patient will be able to return to underground coal mining or any other arduous work, such as pushing, pulling, bending, stooping, lifting, long periods on his feet, climbing, etc." Dr. Oscar Miller said that the "chief disability is bronchitis and emphysema which is not related to his work as a miner." He was not asked and he did not state whether Oaks could continue as a coal miner. And Dr. William H. Anderson deposed that Oaks " * * * is not able to do any type of gainful employment * * * amounting to hard manual labor." He predicated this on pulmonary emphysema, a condition which he found in Oaks.

A doctor here stated that: "Patient has chronic poliomyelitis of the left lower extremity which began at nine months of age and has continued to date. He has atrophy of the left lower extremity and arthritis in his left knee." However, he continued: "This patient was able to work with this and he sustained no disability to the left lower extremity as a result of an industrial accident." There was medical evidence that Oaks "had a proliferated bronchitis secondary to" a rather marked stage one or early stage two silicosis. However, the doctor who made those statements found no nodulations.

We are referred to no evidence which rises to the quality of refuting the foregoing testimony and that of Oaks that he no longer can work as a coal miner.

We held in Fraley v. Rusty Coal Co., Ky., 399 S.W.2d 479 (1966), that whatever may be the degree of physical impairment established by the medical testimony it is the obligation and duty of the board upon the whole evidence to determine the occupational disability of the claimant. Cf. Congleton Bros., Inc. v. Farmer, Ky., 399 S.W.2d 722 (1966). "Functional disability is a medical question but occupational disability is not. Kilgore v. Goose Creek Coal Co., Ky., 392 S.W.2d 78 (1965)." Whitis v. Southern Belle Dairy, Inc., supra. Occupational disability and functional disability are not necessarily synonymous.

Had there been conflicting testimony as to occupational disability (as appellees contend) we could not hold as a matter of law that the board was required to find Oaks totally disabled. Cf. Columbus Mining Co. v. Childers, Ky., 265 S.W.2d 443 (1954); Lee v. International Harvester Co., Ky., 373 S.W.2d 418 (1963); Baker v. Codell Construction Co., Ky., 437 S.W.2d 759 (decided January 28, 1969). Conflicting substantive evidence as to facts makes the board's determination conclusive. Dobbs v. Inland Steel Co., Ky., 402 S.W.2d 88, 89 (1966); Young v. Mill Branch Mining Co.,

Ky., 435 S.W.2d 453 (1968); Young v. Dale, Ky. (decided February 28, 1969).

Without conflicting testimony as to *occupational disability* the board was not justified in adopting the *functional disability* estimate made by Dr. Fischer as the measure of occupational disability. Within the meaning of the workmen's compensation law Oaks was totally and permanently disabled and was entitled to recover on that basis. Leep v. Kentucky State Police, supra; Deby Coal Co. v. Caldwell,[2] supra; and South 41 Lumber Company v. Homer Gibson, Ky., 438 S.W.2d 343 (decided February 28, 1969). The award must be properly apportioned pursuant to KRS 342.-120.[3] Alva Coal Corp. v. Ealy, Ky., 367 S.W.2d 833 (1963).

The judgment of the circuit court is reversed for remand to the board with directions to make an award consistent with this opinion.

All concur, except MONTGOMERY, C. J.

2. See footnote number 1.

3. No question was raised as to whether the special fund properly can be required to pay all of that part of the permanent disability which is not charged to the employer.