**CATALYTIC CONSTRUCTION COMPANY, etc., et al., Appellants,**

v.

**Harley B. OGBURN et al., Appellees.**

Court of Appeals of Kentucky.

March 21, 1969.

Rehearing Denied June 27, 1969.

William G. Reed, Carrollton, for appellants.

H. K. Northcutt, Carrollton, for appellees.

STEINFELD, Judge.

Appellee, Harley B. Ogburn, a construction laborer for appellant, Catalytic Construction Company, sustained an injury during the course of his employment. The bones in the right hand were crushed, and even after surgery the thumb and first finger remained virtually useless. Ogburn claimed under KRS 342.110 before the Workmen's Compensation Board.

The Board concluded that the claimant "suffered a 40 per cent permanent partial disability to his body as a whole" and made its award on that basis. The employer and its insurance carrier appealed. The circuit court adjudged that the award of the Board should stand and entered judgment dismissing the appeal. The matter comes before us on an appeal from that judgment. We affirm.

With respect to his disability in performing work Ogburn testified: "That's as far as that thumb there will come up and like a screw or a hammer or anything like that or lifting heavy loads, this thing all swells in here yet and still runs up my arm. * * *. And this finger here won't go all the way down, * * *." He explained that as a laborer in construction work he had to "do a little of everything" and that he has hardly any grip and that being right-handed it is very difficult for him to do many of his work assignments. The index finger was left stiff. He complained that when he would do heavy lifting or anything like that he experienced pain in his arm throughout the night.

Two physicians testified for claimant. No testimony was offered by appellants. Dr. Leo Oliver, a general practitioner of

seventeen years' experience who had been Ogburn's family physician, said:

"A. I rated his disability as 40 per cent on the basis that he is right-handed, that he is dependent upon physical labor for his source of income; he is unable to write, he would never make a record keeper or anything like that; and also, in machinery work he would be unable to use his right hand to any appreciable amount; and since he is normally right-handed and since he lost the most important feature of his right hand, I felt that 40 per cent was conservative, actually, to the body as a whole. That's my personal opinion because I would not pass him for anything if I examined him."

Dr. Allan F. Zoeller, an orthopedic surgeon, said there was "partial permanent disability to the body as a whole of 8 per cent". However, Dr. Zoeller conceded that "without having a normal hand, as he doesn't have on the right side, it would make it more difficult for him to gain employment than someone with a normal hand." and that if he, Dr. Zoeller, was examining physician for a company he would not pass Ogburn for employment.

Appellants contend that because one of the medical witnesses for claimant testified that Ogburn suffered a 40% permanent disability to his body as a whole and the other said that the disability was only 8% there was a divergence of opinion in the medical testimony, therefore, "* * * the findings of the Board were clearly erroneous, the award is excessive and is not supported by the evidence."

Counsel for appellants argues that the substantial difference in the medical testimony "leaves the case standing without supporting evidence to the extent of the disability and the finding of the Board without supporting evidence of probative value." Further that "* * * the degree of impairment is controlled by the testimony of competent doctors." and they cite Contractors Service and Supply Co. v. Chism, Ky., 316 S.W.2d 840 (1958). In

*Chism* we said: "We conclude under the circumstances that the only competent witnesses to prove the decisive fact involved must necessarily be members of the medical profession."

Appellants assert that "Had Ogburn elected to call either one of the doctors and not the other he would have sustained the extent of injury to sufficient extent to uphold an award" but having elected to call the two doctors their testimony "leaves this case standing without the testimony of the medical profession as supporting the award made." They rely on Mudano v. Philadelphia Rapid Transit Co., 289 Pa. 51, 137 A. 104 (1927), which held that when the burden is on a claimant who must prove his case by expert testimony "* * * it is his duty to furnish consistent and not inconsistent advice, otherwise the jury would be confused rather than instructed." The Pennsylvania court held that vital disagreement in the testimony of plaintiffs' experts will defeat the claim. It said: "In the present instance, we are not dealing with the rules of evidence applicable to ordinary witnesses, * * *" and

"* * * where, as here, the point before them (the jurors) requires special scientific knowledge for its solution, and, for that reason, the jurors are dependent on expert evidence to enable them intelligently to reach a decision, if the plaintiff, for the purpose of proving what he claims to be the efficient cause of particular results for which he is claiming damages, undertakes to speak by an expert on that issue, because it requires scientific knowledge for its elucidation, the testimony of the witnesses produced for that purpose must be reasonably consistent, and unequivocal."

However, it qualified its ruling by:

"* * * Moreover, we do not mean, by anything said in this opinion, to intimate that, whenever a litigant calls experts and they disagree, this necessarily destroys his case on the particular point of disagreement; what we do mean is

that, when plaintiff has the burden of proof on an issue of fact which goes to the essence of any material part of his case, and he selects scientific experts to speak for him, because the point at issue can be solved only in that way, such experts are peculiarly his mouthpiece,— they take his place and, so far as the rule laid down in the line of cases first mentioned in this opinion is concerned, may be viewed as though they collectively were the plaintiff himself. If, after being equally accredited by plaintiff, witnesses of the character just described so vitally disagree on essential points as to neutralize each other's opinion evidence, their sponsor has not borne the burden of proof which the law casts upon him, and to that extent has failed to make out his case,—though, in our opinion, minor points of difference between such witnesses should not be thus viewed."

 In the case now before us the two doctors were consistent in all respects except as to the extent of disability to the man as a whole. Seldom do we see a workmen's compensation case in which the medical testimony on the extent of disability, even if produced by the claimant, is in complete agreement. We find it unnecessary to adopt or reject the full rationale of Mudano. It held that the rule should be applied where the experts "* * * vitally disagree on essential points * * *" although "* * * minor points of difference between such witnesses should not be thus viewed." We conclude that the disagreement between Doctors Oliver and Zoeller did not fall within the prohibited category announced in Mudano. Dill v. Scuka, 279 F.2d 145 (CCA 3) (1960). Furthermore, estimates as to the percentage of functional disability are supplied to the Board along with other evidence to enable it to translate that disability to occupational disability. Fraley v. Rusty Coal Co., Ky., 399 S.W.2d 479 (1966); Oaks v. Beth-Elkhorn Corp., Ky., 438 S.W.2d 482 (decided March 7, 1969).

There was sufficient evidence of probative value on which the Board made its finding. Even Dr. Zoeller who rated the disability at 8% to the body as a whole admitted that Ogburn would not be approved by him for employment. "Percentage of physical limitation is a medical question; percentage of disability is not". Kilgore v. Goose Creek Coal Co., Ky., 392 S.W.2d 78 (1965) and Congleton Bros. v. Farmer, Ky., 399 S.W.2d 722 (1966).

The judgment is affirmed.

All concur.